WALTER IRWIN MYERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Myers v. Commissioner
Docket No. 7566-74.
United States Tax Court
T.C. Memo 1976-191; 1976 Tax Ct. Memo LEXIS 216; 35 T.C.M. (CCH) 823; T.C.M. (RIA) 760191; June 14, 1976, Filed *216 Petitioner reported as income for 1972 winnings on racetrack wagers in the amount of $30,074.40 and claimed offsetting wagering losses in the amount of $27,053. Respondent disallowed all but $9,018 of the losses claimed. Held, petitioner's deductible wagering losses found to be $15,000. Held,further, petitioner failed to prove deductible expenses for parking and tolls in excess of the amount allowed by respondent. Paul A. Love, for the petitioner. Robert J. Percy, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1972 in the amount of $6,915.60. One of respondent's adjustments has been conceded by petitioner so that the issues remaining for decision are: (1) Whether petitioner is entitled to a deduction under section 162(a), I.R.C. 1954, [1] *217 for automobile expenses (parking and tolls) in excess of $150, the amount allowed therefor by respondent; and (2) whether petitioner is entitled to a deduction pursuant to section 165(d) for wagering losses in excess of $9,018, the amount allowed therefor by respondent. FINDINGS OF FACT Some facts have been stipulated and are accordingly so found. Petitioner Walter Irwin Myers reported his income and deductions on the basis of cash receipts and disbursements. He filed his individual income tax return for the taxable year 1972 with the Philadelphia Service Center, Philadelphia, Pa. At the time he filed the petition herein, petitioner resided in Pittsburgh, Pa.
During 1972, petitioner was employed as a collector of solicited funds for Hal-Fran Associates, Inc. (Hal-Fran), which is a public relations firm that specializes in fund raising for police, firemen, and other similar organizations. Petitioner's primary obligation was to obtain from the main office of Hal-Fran, which was located in downtown Pittsburgh, the names of those who pledged contributions and the amounts thereof and then drive to the various locations of the contributors to pick up the funds pledged. Accordingly, several times a week, but not every day, petitioner drove his automobile downtown where he would stop at Hal-Fran's office to pick up his assignments and make the downtown calls *218 on his list before proceeding to the stops outside the downtown area. On such occasions, petitioner parked his automobile in a parking lot for which he paif fees of approximately $1.50 per day. Petitioner's collections outside the downtown area entailed travel primarily in Westmoreland, Beaver, Washington, and Allegheny counties. When making these stops, petitioner would usually park his automobile either in the contributor's own lot (or driveway) or at a metered space on the street. As compensation for his services for Hal-Fran, petitioner received a commission based on a percentage of the contribution. He was responsible for all his expenses; petitioner was not reimbursed by Hal-Fran, and he did not account to the firm in any manner. On his income tax return for 1972, petitioner reported total commission income of $9,844 from which he deducted automobile expenses of $5,045, of which $500 represented expenses for parking fees and tolls [2] *219 Petitioner has no record of these claimed business expenses. During 1972, petitioner also frequented the racetrack, primarily that at Waterford Park in Chester, W. Va., where he engaged in wagering activity 4 or 5 nights a week. Petitioner was not a professional gambler; he was a racetrack addict. Most of the betting tickets which petitioner purchased were $2 daily double or perfecta tickets. He bought numerous tickets on each of these events, sometimes "boxing" one or more horses in the first race with each of the horses entered in the second race. Occasionally he bought $5 and $10 tickets on individual races. On his income tax return for 1972, petitioner reported $30,074.40 in racetrack winnings which consisted of 13 separate winnings on daily double or perfecta wagers at Waterford Park. The dates and amounts of these winnings were as follows: Date
Amount
January 8, 1972
$ 3,360.80
January 15, 1972
1,380.20
March 4, 1972
2,295.00
May 27, 1972
6,774.00
July 4, 1972
2,725.20
July 17, 1972
676.80
August 7, 1972
2,785.60
August 21, 1972
2,058.00
September 9, 1972
788.60
October 2, 1972
814.80
October 17, 1972
773.80
October 21, 1972
3,196.40
November 4, 1972
2,445.20
Total
$30,074.40
Petitioner signed certification forms for Waterford *220 Park, Inc., acknowledging receipt of the above-specified amounts. No wagering gains other than those for which petitioner signed certification forms were reported by petitioner on his 1972 return. [3]
Against these wagering gains petitioner claimed on his 1972 return a deduction for $27,053 in "Wagering Losses Waterford Park, Inc." Petitioner has no record of his racetrack wagering activities except for $33,140 in losing tickets from Waterford Park racetrack in 1972 that petitioner has in his possession. [4] Virtually all of these tickets are clean and untorn, and most of the tickets purchased for a certain race at a particular window bear identification numbers in sequence. Petitioner's 1972 income tax return reflects no sources of income other than the aforementioned commissions and wagering gains. Petitioner had neither a savings account *221 nor any stocks or bonds. Except for his automobile and personal wardrobe, petitioner had no substantial assets in 1972. During the year in issue, petitioner was unmarried and resided with his mother in a house which she owned. In the statutory notice issued to petitioner on August 20, 1974, respondent determined that the $500 automobile expense deduction for parking and tolls was allowable only to the extent of $150 and that the $27,053 deduction petitioner claimed for wagering losses was allowable only to the extent of $9,018. ULTIMATE FINDING OF FACT Petitioner incurred losses from wagering at the Waterford Park racetrack in the amount of $15,000 during 1972. OPINION The issues presented are (1) whether petitioner is entitled to a deduction under section 162(a) for certain unreimbursed automobile expenses (parking and tolls) in excess of $150, the amount allowed therefor by respondent, and (2) whether petitioner is entitled to a deduction pursuant to section 165(d) for racetrack wagering losses in excess of the $9,018 allowed therefor by respondent. As to the first issue, petitioner claimed on his 1972 return a deduction for parking fees and tolls in the amount of $500 as expenses *222 incurred in connection with his employment as a collector for Hal-Fran Associates, Inc. On brief, petitioner contends that he is entitled to a deduction of $462.50, which amount is based on an estimated $1.50 per day for parking in downtown Pittsburgh and an additional $.35 per day for meter charges for travel to assignments outside the downtown area. Respondent has allowed petitioner a deduction only to the extent of $150. Petitioner bears the burden of proving his entitlement to any amount in excess of that allowed by respondent, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, which we find he has failed to do. Other than his own testimony as to estimated expenditures, petitioner presented no evidence such as parking receipts or contemporaneous records by which to substantiate the expenses claimed. Even were we to accept petitioner's per diem estimates as the appropriate measure of his parking expenses, petitioner has nevertheless failed to establish the frequency of these expenditures. The $462.50 petitioner claims on brief is comprised primarily of the $1.50 fee for downtown parking but petitioner testified that he did not in *223 fact stop downtown every day. Thus, given only estimates for both the rate of petitioner's expenditures and the frequency thereof, we cannot find that petitioner is entitled to any deduction greater than that allowed by respondent. Moreover, to the extent the parking fees were incurred incident to petitioner's travel from his home to his place of employment (Hal-Fran's downtown Pittsburgh office), such expenses would, as respondent points out, constitute personal, commuting expenses which are not deductible. William L. Heuer, Jr.,32 T.C. 947 (1959), affd. per curiam 283 F. 2d 865 (5th Cir. 1960); Steinhort v. Commissioner,335 F. 2d 496 (5th Cir. 1964); Clarence J. Sapp,36 T.C. 852 (1961), affd. per curiam 309 F. 2d 143 (5th Cir. 1962); sec. 262. As to the second issue, section 165(d) authorizes a deduction for losses incurred in wagering transactions but only to the extent of the gains therefrom. On his 1972 income tax return, petitioner claimed a deduction for racetrack wagering losses of $27,053, which amount is less than petitioner's reported wagering gains ($30,074.40). Petitioner contends that he is entitled to the entire deduction claimed, emphasizing that in fact petitioner *224 sustained losses which equalled if not exceeded his total gains. Respondent on the other hand maintains that petitioner's wagering losses are allowable only to the extent of $9,018. Thus, we must decide whether petitioner has sufficiently substantiated racetrack losses in excess of the amount allowed by respondent. Petitioner bears the burden of proof as to the wagering losses claimed. Stein v. Commissioner,322 F. 2d 78 (5th Cir. 1963); Donovan v. Commissioner,359 F. 2d 64 (1st Cir. 1966), affg. a Memorandum Opinion of this Court; Rule 142(a), Tax Court Rules of Practice and Procedure. In support of the claimed $27,053 deduction, petitioner submitted a carton full of uncashed Waterford Park racetrack parimutuel tickets totaling $33,140 in face amount which petitioner testified were losing tickets he had purchased at the Park during the year 1972. These tickets were delivered to respondent's agents for inspection, together with a list of the contents of the various bags in which the tickets were contained. A revenue agent examined the tickets and selected all tickets bearing the dates January 8, May 27, July 4, and October 21, 1972, on each of which days petitioner had won a *225 daily double or a perfecta, for tabulation. The agent's tabulation for each of those days reflected the race or event for which each ticket was issued, the face amount thereof, the numbers of the horses chosen and the serial number of the ticket. The agent testified that most of the tickets were clean and untorn and his tabulation reveals that many of the tickets issued for the same race or event bore sequential serial numbers, which would indicate that they had probably been issued to the same purchaser by the same ticket window at the same time. They also suggest that in many instances the purchaser had "boxed" a particular horse for a daily double or perfecta, i.e., had bet on one horse to win the first race of the daily double combined with every horse entered in the second race of the daily double. In some instances, however, the serial numbers on tickets for the same race were not sequential, which suggests that they were not purchased by the same purchaser at the same time as other tickets were purchased for that race or event. The types and face amounts of the parimutuel tickets and the fact that many of them bear serial numbers in sequence correspond to the pattern of wagering *226 activity attested to by petitioner. Although petitioner admitted to having winnings in addition to those he reported, petitioner testified that on balance he had a net loss from his wagering activities for 1972. Petitioner appeared to be a candid witness and we have a good bit of confidence in his credibility, although we have some reservations about the total accuracy of his memory with respect to his wagering activities during a period several years before the trial. The tickets support petitioner's testimony, but the almost incredible number of tickets produced for some races and events casts considerable doubt that petitioner could have purchased all of them. On the other hand, we have no suggestions supported by evidence of how the tickets might have come into petitioner's possession unless he purchased them. The tickets must have been purchased by someone, unless the track employees were issuing tickets without payment therefor, which seems unlikely. Petitioner also finds support in his uncontradicted testimony concerning his modest style of living and his lack of assets (other than his wardrobe and automobile) which might otherwise evince a modicum of material gain. However, *227 there is evidence that petitioner spent some of his winnings on getting to and from the track and purchasing meals and racing forms, and for other expenses at the track. We have no explanation or evidence of how respondent arrived at his adjustment of petitioner's claimed losses; it is rather evident, however, that he simply allowed one-third of the losses claimed on the return. Based on all the evidence before us we believe petitioner's losses were greater than the amount allowed. We recognize that the uncashed tickets produced by petitioner are rather uncertain corroboration of petitioner's testimony, compare Stein v. Commissioner,supra, [5] and that petitioner's failure to keep records and other data to support those records makes the task of determining his correct tax liability more difficult. With these things in mind, we have done the best we can based on the evidence before us to estimate petitioner's total losses from wagering in 1972, which we find to be $15,000 rather than the $9,018 allowed by respondent. See Herman Drews,25 T.C. 1354 (1956). [6] *228 Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise specified.
2. The remaining $4,545 reflected business mileage of 45,500 computed under the optional method. Petitioner has conceded an adjustment based on respondent's allowance of business mileage only to the extent of 25,000 miles.
3. Petitioner testified that he did have additional unreported winnings in 1972 in spite of which he remained a net loser at the recetrack.↩
4. Petitioner explained that he had claimed on his return less than a full offset to his reported winnings because "* * * I was told by everybody that I'd better show the I.R.S. a profit * * *." [Transcript, p. 53.]↩
5. Compare also Anthony J. Saitta,T.C. Memo. 1975-171; Carol B. Manzo,T.C. Memo. 1972-142↩. 6. See also Salvadore S. Taormina,T.C. Memo. 1976-94, and William H. Green,T.C. Memo. 1972-131↩.