RICHARD F. TYSON AND JOANNE TYSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD F. TYSON, M.D., P.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tyson v. Commissioner
Docket Nos. 2304-77, 2305-77.
United States Tax Court
T.C. Memo 1979-122; 1979 Tax Ct. Memo LEXIS 399; 38 T.C.M. (CCH) 557; T.C.M. (RIA) 79122; April 4, 1979, Filed Joseph L. Gibson, Jr., for the petitioners. Dale Eggleston, for the respondent. *401 DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Taxable Year Petitioners
Dkt. No.
Ended
Deficiency
Richard F. Tyson
2304-77
December 31, 1973
$1,282.52
and Joanne Tyson
December 31, 1975
1,577.58
Richard F. Tyson,
2305-77
October 31, 1973
1,716.95
M.D., P.A.
October 31, 1974
1,237.76
In addition to the above deficiencies, respondent determined that an overassessment in tax of $127.14 had been made for Richard F. and Joanne Tyson for their taxable year ended December 31, 1974. Part of the deficiency for Richard F. Tyson, M.D., P.A. for the taxable year ended October 31, 1973, results from the partial disallowance of a net operating loss carryback from the corporation's taxable year ended October 31, 1975. Some adjustments have been conceded by the petitioners. The issues remaining for decision are: (1) whether the Court has jurisdiction to redetermine the amount of an overassessment in income tax for Richard F. and Joanne Tyson for the year 1974; (2) whether the corporate petitioner is entitled to deduct more than *402 25 percent of certain automobile expenses paid by it as ordinary and necessary expenses incurred in carrying on its business for the taxable years ended October 31, 1973, 1974, and 1975; (3) whether 75 percent of the automobile expenses paid by the corporation during its taxable years ended October 31, 1973, 1974, and 1975 were for Richard Tyson's personal use of his automobile and, if so, whether such expenditures constitute dividend income to him under the provisions of sections 301 and 316; [1] (4) whether Richard Tyson is entitled to depreciation deductions for his personal use of an automobile in his business during the years 1973, 1974, and 1975 in an amount greater than that determined by respondent; (5) whether Richard Tyson is entitled to a deduction for office-in-home expenses in 1975 and, if so, whether such expenses were properly substantiated; and (6) whether the corporate petitioner is entitled to a deduction in an amount greater than that determined by respondent for contributions made to its pension plan during its taxable year ended October 31, 1973. *403 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Richard F. Tyson and Joanne Tyson, the individual petitioners, were legal residents of Columbia, Maryland, when they filed their petition herein. Richard F. Tyson, M.D., P.A. (the corporation) had its principal office at 936 W. North Avenue, Baltimore, Maryland, at the time its petition was filed. The petitioners filed timely joint Federal income tax returns for the years 1973, 1974, and 1975. The corporation filed timely Federal income tax returns for its fiscal years ended October 31, 1973, 1974, and 1975. Richard F. Tyson (Dr. Tyson) is a practicing physician and the sole stockholder of the corporation. His personal residence is in Columbia, Maryland, but he does not maintain a medical office there. Dr. Tyson's normal work routine is to leave his home in Columbia, Maryland, in the morning and either go to the bank, or to Provident Hospital, located at 2600 Liberty Heights Avenue, Baltimore, Maryland, or to the George Washington Carver Nursing Home located at 607 Pennsylvania Avenue in Baltimore. Provident Hospital and the George Washington Carver Nursing Home are located within an approximate *404 two mile radius in the city of Baltimore, and each is approximately fifteen miles from Columbia, Maryland. The bank is located six miles from Dr. Tyson's home. Dr. Tyson's medical office at 936 W. North Avenue is approximately three to four miles from Provident Hospital and the George Washington Carver Nursing Home. In the evening Dr. Tyson would usually leave his medical office and go to either the George Washington Carver Nursing Home or to Provident Hospital and then to his home. Sometimes he attended meetings or returned to his office. During the years 1973 through 1975 neither Dr. Tyson nor the corporation kept any records of the miles traveled each day by Dr. Tyson or the place of business traveled to and from or the purpose of the travel. The certified public accountant for Dr. Tyson requested that he keep a log of his mileage for a two-week period which he did from September 29, 1975 through October 12, 1975. The log maintained by Dr. Tyson showed that during the two-week period he traveled a total of 389 miles. Of this total 298 miles were driven by Dr. Tyson between his home and his first and last business stops of the day, i.e., between his home and the bank, *405 Provident Hospital, George Washington Carver Nursing Home or a business meeting. The remaining 91 miles were driven by Dr. Tyson between various business locations. Dr. Tyson followed the same basic work routine during the years 1973 through 1975 that he did for the period he maintained the travel log. The corporation paid all operating expenses for Dr. Tyson's automobile for which it deducted the following amounts as a business expense: Taxable Year Ended
Amount
October 31, 1973
$1,229.95
October 31, 1974
1,909.97
October 31, 1975
1,771.67
The corporation's balance sheets for the taxable years ended October 31, 1973, October 31, 1974, and October 31, 1975, show Unappropriated Retained Earnings in the respective amounts of $7,470.33, $13,902.01, and $5,124.77. During the year 1973 Dr. Tyson drove a 1969 Dodge which he purchased during 1969. During the years 1974 and 1975 Dr. Tyson drove a Mercedes which he purchased on February 13, 1974, for $13,100. Petitioners Richard and Joanne Tyson deducted $600 as a miscellaneous deduction on their 1975 Federal income tax return as an office-in-home expense. Their home has nine rooms, including the basement. *406 Dr. Tyson did not see patients at his home. The amount of the claimed office-in-home deduction is an estimate of Dr. Tyson's expenses. He did not substantiate the amount of such expenses. Dr. Tyson's medical office at 936 W. North Avenue in Baltimore was available for his use. This office space was shared by Dr. Tyson with two other doctors. All three doctors were able to see patients at the same time. The medical office was sometimes used until 8 or 9 p.m. several nights during the week. In his notice of deficiency dated December 16, 1976, respondent disallowed $10,820.79 of the corporation's claimed pension plan deduction with the following explanation.. The amount of $22,503.93 claimed as a pension plan deduction is not allowed to the extent of $10,820.79 because it has not been established that any amount in excess of $11,683.14 is allowable under the provisions of section 404 of the Internal Revenue Code. The corporation offered no proof that it made contributions to its pension plan in excess of the amount allowed by respondent or that an amount greater than $11,683.14 would not exceed the limitations contained in section 404(a)(1) as *407 to the amount deductible in the taxable year ended October 31, 1973. OPINION Issue 1. Lack of Jurisdiction for 1974.
After auditing the individual petitioners' Federal income tax return for 1974 the respondent determined an overassessment in tax, but no deficiency for that taxable year. Petitioners have attempted to place in issue facts with respect to the year 1974 which, if found in their favor, would increase the amount of the overassessment. Sections 6214(a) and 6512(b) of the Code provide a short answer. This Court has no jurisdiction over any taxable year in which the Commissioner has not first determined a deficiency. [2] Therefore, we hold that we lack jurisdiction to redetermine the overassessment for 1974. Gallo v. Commissioner,T.C. Memo. 1975-366. Issues 2 and 3. Automobile Expenses.
Dr. Tyson is a medical doctor who is employed by his closely held corporation. He used his personal automobile in his work. The corporation paid for *408 100 percent of the expenses incurred by Dr. Tyson in operating his automobile during the corporation's taxable years ended October 31, 1973, October 31, 1974, and October 31, 1975. Dr. Tyson maintained no record of the actual miles traveled by him during these years except for a two-week period from September 29, 1975, through October 12, 1975. During the two-week period from September 29, 1975, through October 12, 1975, he traveled a total of 389 miles; representing 298 miles traveled between his home and his first and last business stops of the day and 91 miles of travel other than between his home and his first and last business stops of the day. During the years 1973, 1974, and 1975, Dr. Tyson followed the same basic work routine that he did during the period from September 29, 1975, through October 12, 1975. His normal work routine is to leave his house in Columbia, Maryland, in the morning and either go to the bank, or to Provident Hospital in Baltimore, or to the George Washington Carver Nursing Home in Baltimore. From the hospital or nursing home Dr. Tyson would then go to his office located at 936 W. North Avenue, Baltimore, Maryland. The hospital, the nursing home, *409 and his office are all within very close proximity to one another within the city of Baltimore. All are approximately 15 miles from Columbia, Maryland. His bank is located six miles from his home in Columbia. Respondent determined that during the years in question Dr. Tyson used his automobile approximately 75 percent of the time for personal use and approximately 25 percent of the time for business use. It was determined that the percentage of expenses incurred by Dr. Tyson for transportation from his residence to his first business stop of the day and from his last business stop of the day to his home were for commuting and, therefore, nondeductible personal expenses. During the taxable years ended October 31, 1973, October 31, 1974, and October 31, 1975, the corporation paid all of the operating expenses for Tyson's automobile. Since it was determined that 75 percent of these expenses were personal expenses of Dr. Tyson the notice of deficiency sent to the corporation shows a disallowance for 75 percent of the automobile expenses deducted on the corporate returns. The amounts of disallowance for each of the years was determined to be additional dividend income to Dr. Tyson. *410 It is well established that amounts incurred in traveling between one's residence and regular place of employment are nondeductible personal expenses of commuting. Secs. 1.162-2(e), 1.212-1(f), 1.262-1(b)(5), Income Tax Regs.; Commissioner v. Flowers,326 U.S. 465 (1946); O'Hare v. Commissioner,54 T.C. 874, 875 (1970); and Anderson v. Commissioner,60 T.C. 834, 835 (1973). The expenses incurred by Dr. Tyson for traveling between his residence and his first and last business stops of the day bear no relationship to the business activity of the corporation or to the business activity of Dr. Tyson as an employee of the corporation. Green v. Commissioner,59 T.C. 456, 459 (1972). When he traveled directly from his home to his office, the costs were clearly nondeductible commuting expenses. The rule is no different when he traveled from his home to a hospital or nursing home to practice his profession. The courts have repeatedly held that the costs of such trips are not deductible. See O'Hare v. Commissioner,supra; *411 Sheldon v. Commissioner,50 T.C. 24 (1968); Sapp v. Commissioner,36 T.C. 852 (1961), affd. per curiam 309 F.2d 143 (5th Cir. 1962); Marot v. Commissioner,36 T.C. 238 (1961). Accordingly, we conclude on this record that Dr. Tyson has failed to prove that more than 25 percent of the expenses paid for by the corporation bear any relationship to the business activity of the corporation. Consequently, respondent's disallowance of the automobile expenses as ordinary and necessary expenses of the corporation is correct and his determination that the amounts disallowed constitute constructive dividends to Dr. Tyson must be sustained. Issue 4. Depreciation on Automobile.
Dr. Tyson used his personal automobile in his trade or business during the years 1973, 1974, and 1975. During the year 1973 he drove a 1969 Dodge. During the years 1974 and 1975 he drove a Mercedes which he purchased on February 13, 1974. As previously noted, the corporation paid 100 percent of the operating expenses for the automobile driven by Dr. Tyson. In his notice of deficiency sent to Richard and Joanne Tyson the respondent allowed *412 a depreciation deduction for the years 1974 and 1975 based upon the determination that Dr. Tyson used his automobile 25 percent of the time for business. Petitioners contend that Dr. Tyson used his car more than 25 percent of the time for business and that he should be allowed a larger percentage deduction for depreciation. We think the respondent correctly determined the applicable percentage of business use. Therefore, we sustain the determination. Petitioners also contend that the respondent erroneously failed to allow any depreciation for the year 1973. No depreciation was claimed on Dr. Tyson's return for that year. We conclude on this record that petitioners have failed to show Dr. Tyson's basis for a depreciation allowance. No evidence was offered to show the cost of the automobile Dr. Tyson was driving during 1973. Furthermore, since the car was purchased in 1969, the petitioners have failed to show that the automobile was not fully depreciated prior to the year 1973. Issue 5. Home Office Expense.
The amount of $600 claimed by Dr. Tyson is an estimate of maintaining an office in his home. He saw no patients there. He apparently used one room for the following *413 purposes: (1) to record medical dictations, write summaries of medical records, and to do work related to his medical practice in Baltimore; (2) to prepare medical writings and dictations on cases that he would present to medical groups; (3) to make and receive telephone calls from patients, drug stores, and the hospital; (4) hold meetings not more than four times during the year 1975 with attorneys, accountant, and other business associates. In our opinion Dr. Tyson's office-in-home expenses were personal and nondeductible under section 262. He contends that he had a home office because it provided him with a quiet place to dictate and was more conducive to doing paper work than his Baltimore office. He also contends that his home office was more secure than his Baltimore office. Even though Dr. Tyson shares office space with two other doctors where all three are able to see patients at the same time during the day, he asserts that their offices were "really not conducive to doing any type of paper work." Nevertheless his medical office was available for his use at all times. The facts demonstrate that the claimed home office expenses were incurred for his personal *414 convenience and not as a condition to his employment with the corporation. This Court has previously denied home office expenses to taxpayers who had offices at work. See Sharon v. Commissioner,66 T.C. 515, 522-525 (1976), affd. per curiam     F.2d     (Nov. 24, 1978); Meehan v. Commissioner,66 T.C. 794, 806-808 (1976); On-Ri-Ga Medical Professional Association v. Commissioner,T.C. Memo. 1978-183. In each of these cases we stated that the mere fact that a taxpayer's use of his residence for work is "appropriate and helpful" in his employment does not make such expenses deductible under section 162(a). The Sharon and Meehan cases require the taxpayer to establish that part of the residence constitutes a "place of business" in order to deduct expenses of maintaining the residence. Dr. Tyson has failed to satisfy this requirement. In addition, he has not shown that he incurred any expenses by working at home that he would not otherwise have incurred. Meehan v. Commissioner,supra at 808. Therefore, *415 we sustain respondent on this issue. Issue 6. Pension Plan Deduction.
In his notice of deficiency sent to the corporation the respondent determined that $10,820.79 claimed as a pension plan deduction on the corporate return for the year ended October 31, 1973, was a nondeductible expense because the corporation failed to establish that any amount in excess of $11,683.14 was an allowable deduction under section 404. It contributed $7,000 to its profitsharing plan and $22,503.93 to its pension trust plan during its taxable year ended October 31, 1973. The corporation claimed a deduction of $29,503.93. Section 404(a)(1), as in effect at the time of the claimed deduction, provided, in pertinent part, that contributions paid to a pension trust are not deductible in an amount in excess of 5 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the trust plus any excess necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, *416 or a level percentage of compensation, over the remaining future service of each such employee. The amount that was necessary to provide with respect to all employees under the trust the remaining unfunded cost of their past and current service credits for the period of December 1, 1972, through November 30, 1973, as determined by the actuary for the pension plan trustees, was $11,683.14.
Section 404(a)(3), as in effect at the time of the claimed deduction, provided, in pertinent part, that contributions paid to a profit-sharing trust are deductible in the taxable year when paid but not in an amount in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the profit-sharing plan.The contributions paid to the corporation's profit-sharing trust during the taxable year ended October 31, 1973, totaled $7,000, which amount was not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the profit-sharing plan. *417 Section 404(a)(7) provided as follows: If amounts are deductible under paragraphs (1) and (3), or (2) and (3), or (1), (2), and (3), in connection with 2 or more trusts, or one or more trusts and an annuity plan, the total amount deductible in a taxable year under such trusts and plans shall not exceed 25 percent of the compensation otherwise paid or accrued during the taxable year to the persons who are the beneficiaries of the trusts or plans. In addition, any amount paid into such trust or under such annuity plans in any taxable year in excess of the amount allowable with respect to such year under the preceding provisions of this paragraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this paragraph shall not exceed 30 percent of the compensation otherwise paid or accrued during such taxable years to the beneficiaries under the trusts or plans. This paragraph shall not have the effect of reducing the amount otherwise deductible under paragraphs (1), (2), and (3), if no employee is a beneficiary under more *418 than one trust, or a trust and an annuity plan. The total amount otherwise deductible under section 404(a)(1) for contributions to the corporation's pension plan for the year ended October 31, 1973, was $11,683.14, and the amount deductible under section 404(a)(3) for contributions to the profit-sharing plan was $7,000. The corporation had no carryover contributions to its year ended October 31, 1973, from prior years under section 404(a)(7). See Orthopedics International Ltd. v. Commissioner,71 T.C. No. 90 (March 19, 1979). No proof was offered that the corporation made any contributions to its pension plan during its taxable year ended October 31, 1973, in excess of the amount allowed by respondent as a deduction. Furthermore, it has not been established that a deduction, in an amount greater than that allowed by the respondent, would not exceed the limitations on the amount deductible as contained in section 404(a)(1). Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. A limited exception to this general rule exists with respect to various declaratory judgment actions.↩