CLARENCE J. SAPP AND HILDA C. SAPP, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84656. Filed August 15, 1961.

*Harold E. Smith, Esq.,* and *Walter Akerman, Jr., Esq.,* for the petitioners.

*Ford P. Mitchell, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in petitioners' income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1955 | $409.80 |
| 1956 | 749.81 |
| 1957 | 892.38 |

The only issue not fully resolved by the stipulation filed herein is the extent to which depreciation and expenses are allowable with respect to a certain automobile.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioners are husband and wife residing in Rome, Georgia, who filed joint Federal income tax returns for the calendar years 1955, 1956, and 1957 with the district director of internal revenue at Atlanta, Georgia. Petitioner Hilda C. Sapp is involved solely because joint returns were filed, and Clarence J. Sapp will hereinafter be referred to as petitioner.

Petitioner is a physician and surgeon who was engaged in the general practice of medicine in Rome, Georgia, during the taxable years. He maintained an office and was on the staff of two hospitals in Rome. He treated patients at his office, in the hospitals, and at the patients' homes, but never in his own home.

In the course of his practice petitioner was on emergency call for some period of time by one of the hospitals. This usually occurred once every 10 days or 2 weeks. In addition, he was on emergency call for his own patients at all times when in the city of Rome. He averaged one emergency call to a hospital per night during the years in issue.

In addition to emergency calls, petitioner averaged two house calls per week outside of normal office hours. These office hours were 10 a.m. to noon and 2 to 5 p.m. 4 days a week, and until 12:30 or 1 p.m. on Wednesday and Saturday.

In each of the taxable years petitioners owned two automobiles, one of which was principally devoted to family and personal use and the

other of which petitioner considered as the business automobile. Petitioner deducted all of the expenses and applicable depreciation for the latter automobile, based on a zero salvage value. A salvage value of $900 has been stipulated.

Each day, petitioner used his business automobile in getting from his residence to his first place of practice and in returning from his last place of practice in the evening; for going home for lunch twice a week; for calls made after office hours; for transportation from his office to the hospitals or to patients' homes; for trips for the care and management of business property; for trips to medical meetings and conventions; and for trips to and from social engagements in Rome. The primary purpose of using the business automobile for these social engagements was to have it available in case he was called on an emergency. When petitioner went hunting, the business automobile remained at home and could have been used by Hilda.

Petitioner averaged between 10,000 and 12,000 miles per year on the business automobile, or about 30 miles per day. The distance from petitioner's home to his office is 2 miles; from his home to the Floyd Hospital, where he has the major part of his practice, 3 miles; and from that hospital to his office, 0.8 miles. Generally petitioner begins his day's work at the hospital. His last place of business is usually also the hospital, unless he has to make a house call.

Petitioner kept no records of the use of his business automobile.

Respondent calculated that petitioner traveled 11.6 miles in an average day as follows:

| | Miles | | Miles |
|---|---|---|---|
| Home to hospital | 3.0 | Office to hospital | 0.8 |
| Hospital to office | 0.8 | Hospital to home | 3.0 |
| Office to home for lunch | 2.0 | | |
| Home to office after lunch | 2.0 | Total | 11.6 |

Respondent allowed only the trips between the hospital and the office as business trips, deeming the others to be personal.

Petitioner attended medical conventions every year at issue in Chattanooga, Tennessee, 70 miles from Rome. In one of such years he attended another convention in Atlanta, Georgia, also 70 miles distant. In 1957 he attended a convention in New York City, a journey of 900 miles on which he was accompanied by his wife. Petitioner also visited a brother in New Jersey as a part of the New York trip.

Petitioner made two trips to Albany, Georgia, in 1957 to attend to some commercial property owned by him. Albany is 220 miles from Rome. He also looked after commercial property owned by him in Rome, namely the office building in which his office was located.

Respondent determined that the business automobile was driven an average of 3 miles per day to conventions and to care for and manage commercial property. He also determined that 6 to 10 miles per day

were needed for emergency calls. Including also the 1.6 miles daily traveled between the office and the Floyd Hospital, respondent concluded that 10.6 to 14.6 miles per day were driven for business purposes. Since he determined that an average 30 miles per day was driven in this car, he allowed 43 percent of the expense and depreciation deductions.

The business automobile was used 75 percent for business purposes during 1955 and 1956, and 85 percent for business purposes during 1957.

OPINION.

Petitioner deducted all of his expense and depreciation appurtenant to the business automobile on the theory that even when it was used for so-called personal reasons, he was nonetheless always on call and therefore the car was being used for business purposes.[1]  We disagree.

In *Lenke Marot*, 36 T.C. 238 (1961), we rejected a similar claim by an electrocardiograph operator who was on 24-hour call and who sought to deduct expenses of getting to work from wherever she happened to be when called. We said:

It has long been held that the expenses of an employee incurred on getting from his residence to his place of business are not deductible as ordinary and necessary business expenses. The case of this petitioner is not, for present purposes, any different because she did not always travel from her residence when called to the hospital. The expenses in question are all personal expenses of getting to her work. * * *

We similarly conclude that transportation to social engagements where a physician is on emergency call is in part a nondeductible personal expense.[2]

Petitioner seeks to distinguish *Marot* because technicians do not need automobiles to visit patients and because of the life-preserving function of medical doctors in contemporary society. Although we recognize the necessity of petitioner's ownership of a business automobile, the tax laws do not permit him to use such vehicle for purposes other than those ordinary and necessary to medical doctors, and which are also not personal. Trips to his social club, to home for lunch, and commuting to and from the Floyd Hospital are at least in part personal expenses, even though it was necessary for petitioner to have his

---

[1] All statutory references are to the Internal Revenue Code of 1954.
SEC. 162. TRADE OR BUSINESS EXPENSES.
    (a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *
SEC. 167. DEPRECIATION.
    (a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
        (1) of property used in the trade or business, * * *
[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.
    Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

car immediately available at all times, and its use was therefore necessitated primarily by business reasons.

Petitioner testified that less than 5 percent of the total mileage was for social engagements, and that 10 percent to 15 percent was for commuting, including trips home for lunch. The former are admittedly personal, and the latter are similarly treated. *William L. Heuer, Jr.*, 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960) ; *Lenke Marot, supra.*

Respondent has allotted no mileage for travel to the second hospital on which staff petitioner was stipulated to be. Nor has he considered house calls not of an emergency nature. No exact proof of the distance traveled in these pursuits or of the frequency thereof has been introduced, but using the few facts before us we have made an approximation of these items in arriving at our findings.

The primary purpose of using the business automobile on social engagements was to have it available for emergencies. However, a secondary purpose was the personal enjoyment from the movies, the social clubs, the trips home for lunch, etc. The record before us is far from lucid as to the ratio of emergency calls while at social engagements to the total number of engagements, or as to whether his wife accompanied him to any social events. We must therefore allocate these items, bearing heavily against petitioner because the inexactitude is of his making. *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930). We find that 75 percent of the usage of the business automobile was properly deductible in 1955 and 1956.

We would similarly find for 1957 except for an unusual method of computing used by respondent. He has totaled all trips to conventions and for the care and maintenance of commercial property for all years, divided that figure by the number of days in 3 years, and added the quotient to the daily business mileage. We have found that in 1957 petitioner traveled 1,020 miles for the above purposes, excluding the trip to New York, which was apparently partly personal in nature. Respondent included a trip to Chattanooga and a prorata portion of a one-way trip to New York in each year in his computation. We cannot sustain such a method, especially in 1957 when almost twice such mileage was traveled, assuming the New York trip to be one-half personal. We have therefore allowed a higher percentage for 1957.

*Decision will be entered under Rule 50.*