ROBERT H. KARL and PHILOMENA A. KARL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Karl v. Commissioner
Docket No. 9540-74.
United States Tax Court
T.C. Memo 1976-87; 1976 Tax Ct. Memo LEXIS 315; 35 T.C.M. (CCH) 379; T.C.M. (RIA) 760087; March 22, 1976, Filed *315 Held, disallowance of commuting expenses approved. Fact that petitioner carried and stored some tools in truck he drove to work and his employer expected, but did not require, him to have his own transportation at jobsite does not convert commuting expenses to deductible business expenses. John J. Dean, for the petitioners. Stephen R. Takeuchi, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $260.58 in petitioners' joint Federal income tax for the taxable year ended December 31, 1972. The only issues presented for decision are whether certain automobile and parking expenses incurred by petitioner Robert H. Karl in traveling between his home and employment sites are deductible under section 162(a), I.R.C. 1954, [1] by virtue of the fact petitioner transported tools necessary to the performance of his employment and if so, whether petitioners have properly substantiated the respective amounts of automobile and parking expenses claimed. FINDINGS OF FACT Certain facts have been *316 stipulated by the parties and are accordingly so found. Robert H. and Philomena A. Karl, husband and wife, at all times material herein resided in Penn Hills, Pa., a contiguous suburb of the city of Pittsburgh, Pa. Petitioners filed a joint income tax return, Form 1040, for 1972 with the Philadelphia Service Center, Philadelphia, Pa. In 1972, petitioner Robert H. Karl (hereinafter referred to as petitioner) was employed by the Westinghouse Elevator Company (Westinghouse) as an elevator adjustor, which position he held for approximately 11 of the 15 years (as of 1972) he had been working for Westinghouse. Petitioner was one of two full-time elevator adjustors in Westinghouse's Construction Department. [2] *317 In 1972, his duties as an elevator adjustor consisted of testing, adjusting, re-wiring, and starting up elevator equipment after the installation by elevator constructors; in order to perform these tasks, petitioner was required to work with tools such as meters, tachometers, manuals on adjusting procedures and elevator systems, fuses, company-supplied adjusting tools, relays, and coils. During 1972, petitioner worked principally at three job locations: The Gulf Oil Building, the United States Steel Building, and the Cathedral of Learning on the University of Pittsburgh campus. The first two sites are located across the street from one another in the downtown area and about 2 or 3 miles from the Cathedral of Learning. All three buildings are located within the city limits of the city of Pittsburgh, Pa. The round-trip distance from petitioner's home in Penn Hills to the downtown area where the Gulf Oil and U.S. Steel buildings were situated is approximately 25 miles. Although the length of time that petitioner would be stationed at one of these three sites varied depending on the number of elevators installed and ready for petitioner to work on, petitioner would generally stay at one building for a few weeks and proceed to another before moving back to the first one. Occasionally, petitioner was called away from his regular site to do emergency, troubleshooting work elsewhere. During 1972, petitioner received approximately half a dozen such "troubleshooting" assignments. [3] *318 Petitioner's regular hours were from 8:00 A.M.-4:30 P.M. but when working at the Gulf Oil building, petitioner began around 6:00 A.M. At U.S. Steel, petitioner worked a noon to midnight shift. In addition, petitioner frequently worked on Sundays, particularly when the job required him to check elevators in an occupied building. During 1972, petitioner drove to and from his residence in Penn Hills, Pa., and the three principal job locations in Pittsburgh, Pa., in a half-ton Ford Ranchero pickup truck which he owned. Petitioner used the truck to transport the manuals, [4] tachometer, volt/amp meter, drill motors, and other tools which he did not ordinarily need every day but which he regularly carried with him. Although petitioner stored most of the equipment used on a daily basis in the locked, metal boxes available at each of the Gulf Oil, U.S. Steel, and Cathedral of Learning sites, [5] he did not so store these other tools [6] in the facilities provided because the metal boxes were neither weather proof nor entirely secure from theft. Instead, petitioner kept these tools in his truck to have them accessible if and when needed. *319 [7]
Westinghouse Elevator Company as employer had no written requirement that petitioner, as a condition of his employment, drive his privately-owned automobile to work or have his privately-owned automobile available at any job location. [8] Petitioner received no reimbursement from Westinghouse for his transportation expenses in traveling from his residence to his first jobsite of the day, and from his last jobsite back to his residence. [9] *320 Public transportation provided bus service between the downtown area and a stop approximately one-half of a mile from petitioner's residence, except on Sundays. [10] Since he was first employed as an elevator adjustor, only two or three times has petitioner ever traveled to and from his job location by transportation other than his own automobile. Petitioner believed that a carpool arrangement was not feasible. On their joint income tax return for 1972, the Karls claimed, on Form 2106 (Employee Business Expenses), a deduction for automobile expenses in the amount of $1,185. This figure represents $835, computed on the basis of 6,900 miles at the standard mileage rate of $.12 per mile, plus $350 for parking fees and tolls. Respondent determined that the $1,185 constituted a nondeductible commuting expense and accordingly disallowed the deduction in its entirety. OPINION The *321 primary issue presented herein entails our determination as to whether the automobile and parking expenses incurred in 1972 by petitioner Robert H. Karl in traveling between his residence and jobsite are deductible under section 162(a), [11] I.R.C. 1954, by virtue of the fact that petitioner transported tools integral to his employment, or whether they are personal expenses, nondeductible under section 262. If these expenses are deductible, we must decide the subsidiary issue of whether petitioners have properly substantiated the expenses in controversy. Petitioners contend that not only the necessity of carrying certain tools of petitioner's trade but also the need to have his tools when called away from one job location to another render the *322 automobile and parking expenses ordinary and necessary business expenses and, accordingly, deductible. Respondent, however, characterizes these expenses as commuting expenses, personal in nature and, as such, nondeductible pursuant to section 262 and the regulations thereunder, [12] *323 as well as the express language of section 1.162-2(e), Income Tax Regs.[13]
As both parties recognize, it is well settled that, as a general matter, the expenses of traveling between one's home and one's place of employment (commuting expenses) constitute nondeductible, personal expenditures. Sec. 262; Commissioner v. Flowers,326 U.S. 465 (1946); Fausner v. Commissioner,413 U.S. 838 (1973), rehearing denied 414 U.S. 882 (1973); Eugene G. Feistman,63 T.C. 129 (1974); Frank H. Sullivan,1 B.T.A. 93 (1924). We believe that neither the necessity of transporting petitioner's tools to and from work nor the asserted necessity of having *324 petitioner's truck available for inter-site transportation suffices to obviate application of the "commuter rule" herein. With regard to the former, the fact that petitioner carried tools necessary to the performance of his job does not of itself warrant deductibility. As the Supreme Court stated in Fausner v. Commissioner,supra, at p. 839: [14] *325 Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense. We cannot read § 262 of the Internal Revenue Code as excluding such expense from "personal" expenses because by happenstance the taxpayer must carry incidentals of his occupation with him. Additional expenses may at times be incurred for transporting job-required tools and material to and from work. Then an allocation of costs between "personal" and "business" expenses may be feasible. [Footnotes omitted.] Focusing specifically on the evidentiary requisites of the Fausner standard, this Court, in Eugene G. Feistman,supra, recognized that: It is not enough, however, that the taxpayer demonstrate that he carried tools to work. He must also prove that the same commuting expenses would not have been incurred had he not been required to carry the tools. Thus, if he would have driven to work in any event, the fact that he carries "tools" with him is not an additional expense, and no part of the commuting cost is deductible. * * * [63 T.C. at p. 135.] Applying this analysis to the instant case, we note at the outset that while petitioner did in fact transport to and from work certain tools and manuals which he used in the performance of his job and which together may have been too cumbersome to carry by public transportation, we are not altogether persuaded that *326 it was necessary for him to so transport his manuals and equipment. Locked, metal storage boxes were provided at each of petitioner's three principal job locations. Petitioner acknowledged that he used these facilities to store certain of his equipment but because the boxes were neither weather-proof nor secure from theft (or accidents at the construction site), he chose to carry his tachometer, volt/amp meter, manuals, etc., to and from the particular jobsite. Petitioner testified that he occasionally left certain equipment stored in or above the elevator, which areas would, however, presumably be subject to the same risks as alleged in respect of the storage boxes. Moreover, petitioner cited the need to have these items available if and when called away from one jobsite to go to another as further justification for carrying that equipment each day, yet the record indicates that petitioner received only approximately half a dozen such calls during 1972. Thus, we are not entirely certain whether and to what extent the exigencies of petitioner's employment, rather than personal preference, mandated the transportation of tools. Assuming, arguendo, that these doubts are resolved in petitioner's *327 favor, we nevertheless find that petitioner has failed to establish that, absent the necessity of transporting the manuals and equipment, petitioner would not have driven the truck. Petitioner's work schedule rendered public transportation impractical, if not impossible, and petitioner did not consider a carpool arrangement feasible. In fact, only two or three times since he was first employed as an elevator adjustor did petitioner ever travel to and from work other than by his personal automobile. Furthermore, there is no evidence that petitioner's expenses incurred in driving the truck to and from work were increased at all by virtue of the tools and manuals he carried; from the nature of the articles carried it is unlikely that there was any such additional expense. Having found that petitioner would have driven his automobile between his home in Penn Hills and his jobsite, even had he no tools to carry, and that carrying tools involved no additional expense, we conclude that petitioner incurred no "additional expenses" within the meaning of Fausner v. Commissioner,supra.Eugene G. Feistman,supra. See Rev. Rul. 75-380, 1975-35 I.R.B. 9. In respect of petitioner's further contention *328 that since he was required to have the pickup truck itself available for transportation between jobsites, the costs of travel between his home and his jobsite therefore constitute ordinary and necessary business expenses deductible under section 162(a), the record contains no support for petitioner's premise and accordingly precludes any such argument. Although it may have been the accepted as well as the expected practice of elevator employees in the area to use their personal automobiles rather than request a supervisor to provide transportation, petitioner was, however, under no such requirement as a condition of his employment. The fact that, pursuant to its policy in effect in 1972, Westinghouse reimbursed its employees for on-the-job (inter-site) transportation at a rate computed by reference to public transportation fares militates against petitioner's allegations as to the necessity of providing his own transportation; instead, the reimbursement policy supports our conclusion that the expenses in issue constitute personal rather than ordinary and necessary business expenses. Furthermore, there are a number of cases holding that commuting expenses from taxpayer's home to his *329 first jobsite and from his last jobsite to his home are not deductible, for that reason alone, even when the employer, or the nature of the taxpayer's job or occupation requires the taxpayer to have a car available to drive to other job locations during the day, e. g., Steinhort v. Commissioner,335 F. 2d 496 (C.A. 5, 1964), affirming an unpublished opinion of this Court; William L. Heuer, Jr.,32 T.C. 947, affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960); Eugene G. Feistman,supra, at p. 135; Clarence J. Sapp,36 T.C. 852 (1961), affirmed per curiam 309 F. 2d 143 (C.A. 5, 1962). [15]Afortiori, the fact that the employer expected petitioner to have his car available would not make his commuting expenses deductible. On the basis of the foregoing findings and analysis, we hold that petitioners are not entitled to deduct the autombile and parking expenses in controversy; accordingly, we need not reach the derivative issue as to substantiation of the claimed expenses. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise specified.↩
2. Petitioner testified that he worked primarily for the Construction Department although he occasionally did work for the Maintenance and Service Departments on a "lend-lease" basis.
3. This estimate refers only to instances entailing use of petitioner's automobile.
4. Petitioner's work required him to be familiar with at least five different elevator systems for each of which petitioner had a separate manual. ↩
5. Petitioner stored approximately 400 pounds of his tools and manuals in the storage facilities provided. ↩
6. That is, the tachometer, volt/amp meter and some manuals, as well as other unspecified tools. ↩
7. Petitioner testified that he occasionally left some of this equipment in the elevator itself, on top of it or in the elevator machine room (penthouse).↩
8. It was, however, apparently common practice for elevator adjustors to have their own cars; otherwise, if called to another jobsite, the adjustor and his tools would have to be transported by a supervisor. ↩
9. Westinghouse did reimburse employees for transportation between jobsites, calculated on the basis of busfare from a fixed point downtown (the County Courthouse) to the particular jobsite. Petitioner received reimbursement (at the rate of $.80 per diem) pursuant to this policy.
10. Petitioner testified that he was not sure what service, if any, was available past midnight.↩
11. In pertinent part, section 162(a) provides: (a) In General. There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *.↩
12. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. § 1.262-1. Personal, living, and family expenses. (a) In general. In computing taxable income, no deduction shall be allowed, except as otherwise expressly provided in chapter 1 of the Code, for personal, living, and family expenses. (b) Examples of personal, living, and family expenses. Personal, living, and family expenses are illustrated in the following examples: * * *
(5) Expenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) and any other transportation expenses are not deductible unless they qualify as expenses deductible under section 162, § 1.162-2, and paragraph (d) of § 1.162-5 (relating to trade or business expenses), section 170 and paragraph (a)(2) of § 1.170-2 or paragraph (g) of § 1.170A-1 (relating to charitable contributions), section 212 and § 1.212-1 (relating to expenses for production of income), section 213(e) and paragraph (e) of § 1.213-1 (relating to medical expenses) or section 217(a) and paragraph (a) of § 1.217-1 (relating to moving expenses). The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses. 13. § 1.162-2. Traveling Expenses. * * *
(e) Commuters' fares are not considered as business expenses and are not deductible. * * *↩
14. In deciding Fausner v. Commissioner,413 U.S. 838 (1973), rehearing denied 414 U.S. 882 (1973), the Supreme Court resolved the divergence of authority among the Courts of Appeals as to the deductibility of a taxpayer's "tool-carrying" expenses. See Coker v. Commissioner,487 F. 2d 593 (2nd Cir. 1973). Compare Sullivan v. Commissioner,368 F. 2d 1007 (2nd Cir. 1966) and Tyne v. Commissioner,385 F. 2d 40 (7th Cir. 1967) with Fausner v. Commissioner,472 F. 2d 561 (5th Cir. 1973). See also the opinions of this Court in Harold Gilberg,55 T.C. 611 (1971); Donald W. Fausner,55 T.C. 620 (1971); and Robert A. Hitt,55 T.C. 628↩ (1971).
15. See also Alfred Patti,T.C. Memo. 1975-107↩ (1975).