JAMES S. DOUGLAS and KATHLEEN J. DOUGLAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Douglas v. Commissioner
Docket No. 3557-78.
United States Tax Court
T.C. Memo 1979-224; 1979 Tax Ct. Memo LEXIS 302; 38 T.C.M. (CCH) 901; T.C.M. (RIA) 79224; June 6, 1979. James S. Douglas and Kathleen J. Douglas, pro se. Edward M. Robbins, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code *303 of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1975 in the amount of $1114.37. After mutual concessions by the parties there remains in dispute the deductibility, under section 162, [2] of certain expenses claimed by petitioners in connection with their respective employments. FINDINGS OF FACT Some of the facts were stipulated by the parties, and are so found. Only those facts necessary for an understanding of this opinion will be summarized below. Petitioners are husband and wife who, at the date of filing the petition herein, resided in Manhattan Beach, California. Petitioner-wife (Kathleen) was employed in 1975 *304 by American Airlines as a passenger service agent. Although her work was normally during daytime hours, she frequently received calls to take the "graveyard shift". For such nighttime duty she always used her car for the round trip to the airport and return to her home. (She likewise used her car for her regular shift but does not claim that she is entitled to any deduction for such regular shift use of her car.) Kathleen claims 65 percent of her car insurance and 65 percent of her cost of tires in 1975 ($213.93 and $61.13, respectively) as a business expense for such use of her car. Kathleen also claims a business expense in the amount of $149.20, which amount was expended by her for "work shoes" and $81.48 which she paid in part for cosmetics, but mostly for manicures. American Airlines Passenger Service Manual contains a set of Uniform Regulations. "Uniform shoes" are described therein as "a dress shoe with a business-like look." They must be "solid navy or plain or crinkled patent leather." The permitted and prohibited styles are described in detail. The shoes, in Kathleen's opinion, were "unfeminine" and were not worn by her except during work. American's regulations *305 state that "no part of the uniform may be worn for off-duty activities." The Manual also contained detailed regulations as to female make-up and hand and nail care. But for these requirements Kathleen would have spent less in her purchases of cosmetics and in repairing broken nails and other manicuring services. American Airlines conducted inspections to enforce the uniform and grooming regulations, and if an employee was found deficient, a low grade would be entered in her personnel record. Petitioner-husband (James) is a long range planner, or "futurologist," employed by McDonnell Douglas and other corporations, including Transportation Sciences Corporation (TSC) in which he was also a 10 percent shareholder in 1975. TSC, in 1975, was attempting to obtain consulting contracts. James also taught at the University of Southern California (USC). His subject was "strategy policy--macroeconomics." In 1975, James paid $450 to the Bel-Air Bay Club (of which he was member) as one-half of the rental cost of a cabana on the Club's beach premises. (Friends with whom petitioners shared the cabana paid the other half of the rent.) The cabana is 10 feet by 10 feet with an 8 foot ceiling. *306 It contains a table, chairs, and a sofa. James used the cabana for meetings, the purpose of which was to discuss possible consulting contracts for TSC. (He was not successful in 1975 in obtaining any such contract.) He also used it for get-togethers of his USC students, and for entertainment of people connected with McDonnell Douglas and other businesses (including a land venture in which he was interested.) Kathleen would act as hostess on some such occasions. Likewise, their daughter would sometimes share the use of the cabana on such occasions. OPINION Kathleen's commuting expenses. We agree with respondent that no deduction is available for the tire and insurance expense attributable to Kathleen's use of her car. Amounts incurred in traveling to and from one's residence and regular place of employment are commuting expenses which are personal in nature and therefore not deductible as business expenses. Sec. 1.162-2(e), Income Tax Regs.; sec. 1.262-1(b)(5), Income Tax Regs.; and Heuer v. Commissioner,32 T.C. 947, 951 (1959), affirmed per curiam 283 F.2d 865 (5th Cir. 1960), and the cases cited therein. In Sheldon v. Commissioner,50 T.C. 24 (1968), *307 the taxpayer was a physician specializing in anesthesiology. In addition to her regular hours she was on 24 hour call during weekdays and 48 hours every other weekend. She had to respond to emergency calls no matter where she was or what the hour. Yet all such travel from and to her home was held to be a nondeductible commuting expense. See also Marot v. Commissioner,36 T.C. 238 (1961); Sapp v. Commissioner,36 T.C. 852 (1961), affd. 309 F.2d 143 (5th Cir. 1962); Gwinner v. Commissioner,T.C. Memo. 1975-270; and Teer v. Commissioner,T.C. Memo. 1964-80. The facts in all these cases are at least as strong (if not stronger) in the taxpayer's favor as those in Kathleen's case. We are left with no alternative but to sustain respondent's disallowance as to these items. Kathleen's shoes and grooming. To sustain the deduction as to Kathleen's shoes, we must be satisfied that they were "required or essential in an employment" and "not suitable for general or personal wear and * * * not so worn." Kroll v. Commissioner,49 T.C. 557, 566 (1968). Although Kathleen was pressed on cross-examination *308 to admit that the uniform shoes might not have been out of place for street wear with a navy suit, we are convinced they were not actually so used. The shoes were required by American Airlines as part of Kathleen's uniform (the use of which American's regulations prohibited for off duty activities.) Cf. Yeomans v. Commissioner,30 T.C. 757 (1958). We think we would presume too much were we to hold that the work shoes, though "unfeminine", were nevertheless suitable for general wear by Kathleen. We sustain petitioners' $149.20 deduction for Kathleen's shoes. We think the same principles apply to Kathleen's claimed grooming expenses. Although we are convinced, on the basis of the whole record, that Kathleen did expend more for her fingernail care than she would have expended if not so required by her employer, there was no showing that the appearance of her nails lacked suitability for her off-duty life and activities. Moreover, the record does not give us any basis for determining the excess amount (if any) that Kathleen expended for cosmetics as a consequence of her employer's requirements. Applying the analogy of the rules governing deductibility of items *309 constituting work uniforms, we feel that on the record herein we must sustain respondent's determination as to Kathleen's cosmetics and fingernail expense. The cabana rental. Although the Bel-Air Bay Club cabana was an entertainment facility, respondent had not asserted the applicability of section 274 and the strict record-keeping requirements imposed thereunder. At the trial, respondent's counsel agreed with the Court's suggestion that it would be too late for him to rely, for the first time, upon section 274. Under those circumstances, the Court may apply the rule of Cohan v. Commissioner,39 F.2d 540 (2nd Cir. 1930) in making its own approximation as to the use of the cabana. In doing so, as required under the Cohan rule, we must bear heavily against the taxpayer "whose inexactitude is of his own making." We have concluded, on the basis of the record in its entirety, that the cabana was used primarily (though not exclusively) in the furtherance of one or more of James' trades or businesses, and that petitioners are entitled to a 1975 deduction for such use in the amount of $226. To reflect the foregoing determinations, as well as the concessions *310 of the parties, Decision will be entered under Rule 155.
Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩