ANDREW W. SHEA AND ROSEMARY M. SHEA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shea v. Commissioner
Docket No. 4785-76.
United States Tax Court
T.C. Memo 1979-303; 1979 Tax Ct. Memo LEXIS 221; 38 T.C.M. (CCH) 1178; T.C.M. (RIA) 79303; August 9, 1979, Filed *221 Held, amount of business use of petitioners' automobile determined. William R. Busch, for the petitioners. Rick K. Budd, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes of $1,199 and $1,040 for the fiscal years ended September 30, 1972, and September 30, 1973, respectively. The only issue presented for our consideration is the extent of business use of petitioner Andrew Shea's automobile in the course of his medical practice. Determination of the amount of operating expenses, depreciation, and investment credit to which petitioners are entitled depend solely upon a resolution of this question. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, husband and wife, filed timely joint Federal income tax returns for the fiscal years ended September 30, 1972, and September 30, 1973 with the Ogden Service Center, Ogden, Utah. Petitioners resided in Minneapolis, Minnesota, at the time they filed their *222 petition herein. Because Rosemary M. Shea is a petitioner herein solely by reason of her filing a joint return, hereafter references to petitioner are to Andrew W. Shea. Petitioner has been engaged in the private practice of internal medicine in the Minneapolis area since 1947. During the years in issue, his medical office was located at 650 Medical Arts Building in Minneapolis. The office consists of six examining rooms, a waiting room, clerical work room, laboratory room, and a room for electrocardiograms and stress testing. His office staff consisted of three full-time and two or three part-time employees. Besides seeing patients in his office, petitioner saw a number of his patients at St. Mary's Hospital (hereafter St. Mary's) where he had staff privileges. Occasionally, he saw about three patients a year (averaging 3-4 visits per patient) or did consulting work at Fairview Hospital. He also visited a terminally ill cancer patient in a nursing home in 1973 about 20 times, and saw an occasional patient at Methodist Hospital. Petitioner used his office facilities for all of his non-hospitalized patients as well as for the preadmission and post-hospital care of the hospitalized *223 patients. In addition to providing patient care and his consultation work, petitioner was Director of the Department of Nuclear Medicine at St. Mary's for which he received $1,000 per month. In this capacity, he supervised the department's procedures and had various administrative duties. However, he was not considered an employee of the hospital, and the Department was developed by doctors, including petitioner, in order to provide their own patients with certain necessary tests. Petitioner received additional fees for performing electrocardiogram readings and interpreting nuclear tests. These fees were billed directly to the patient by St. Mary's which would deduct a portion of the fee for clerical and other expenses and then remit the balance to petitioner (or other physicians on the staff who, along with petitioner, performed the readings on a rotational basis). Petitioner received about 25 percent of his gross medial revenue from his various services at St. Mary's. During the taxable years in issue, petitioner owned a 1971 station wagon which he considered his business vehicle. He deducted the entire operating costs of maintaining the station wagon including depreciation, *224 except for amounts paid for gasoline by his wife and daughters on those occasions when his wife drove the station wagon on vacations to Cross Lake with the children or when the children or his wife ran small errands. These trips and errands were infrequent, however, and on those occasions when his wife drove the station wagon to the lake, petitioner used one of his other cars. He also used one of his other cars when his station wagon was being repaired. He claimed no deductions for use of the substitute cars. Petitioner estimated that he drove the station wagon between 10,000 and 12,000 miles per year although he kept no diary or log with respect to his travel or transportation for either the station wagon or other cars. Although petitioner's routine varied from day to day, it usually consisted of driving to St. Mary's in the morning from his home except for certain weekends when another internist would make his rounds for him. Petitioner was not certain as to the number of these weekends during the years in issue, but worked at least one weekend out of every four. On Mondays, Tuesdays and Thursdays, petitioner would drive from St. Mary's to his office where he was scheduled *225 to see patients beginning at 2:00 p.m. On these days, after completing his work at the office, he would normally drive directly home. On occasion, however, he went from his office to St. Mary's before he returned home. He also drove to his office two or three times per week on days that he did not see patients to read reports, dictate patient records and patient insurance reports, and work on other business-related matters. The time of day he went there varied as did the length of time he stayed and worked there. Petitioner attended quarterly staff meetings at St. Mary's which were held at the hospital on evenings of days he spent at his office. He also belonged to two professional organizations which had meetings that he drove to and attended; he attended one meeting a year of the Minnesota Society of Internal Medicine in either Rochester, Minnesota (90 miles from Minneapolis) or Duluth, Minnesota (160 miles from Minneaplis); he also drove nine to ten miles from home to Minneapolis for the Society of Internal Medicine meetings three or four times a year. Petitioner was on call 24 hours each day, except during weekends when another internist would be covering his patient *226 load. While on call status, petitioner could be reached at all times by the Hennepin County Medical Service in case of an emergency and he maintained 24 hour telephone coverage and kept his office and answering service posted as to where he could be reached at any time. The public transportation in Minneapolis was too slow and intermittent to be suitable for such calls and the only practical means of responding to the calls was for him to have his automobile readily available. Petitioner received a number of emergency telephone calls daily and three or four every night at such places as his home, his office, various social events and numerous other places where he happened to be. Normally, such calls did not require him to travel to the hospital, but occasionally he would have to drive there for an emergency. Petitioner was not certain as to the number of times he had driven to St. Mary's on an emergency basis after being contacted by telephone, although he generally made at least one emergency visit each month. In addition to his driving the station wagon from his home to St. Mary's each morning, from his last place of work during the day to his home, from one place of work *227 to another, for attending professional meetings and for traveling from wherever he happened to be to St. Mary's for emergencies, petitioner usually drove the station wagon for personal reasons; for example, to attend social events, to play golf, and to go on vacation with his family. During the relevant fiscal years, the approximate one-way mileage between the various locations was as follows: Home to St. Mary's
13 miles
Dr. Shea's office
to St. Mary's
3 miles
Home to office
9 1/2 to
10 miles
St. Mary's to
Fairview Hospital
1/2 mile
St. Mary's to nurs
ing home
2 miles
Office to nursing
home
5 miles
Home to nursing
home
15 miles
Home to Professional
Society Meetings
held in downtown
Minneapolis
9 to 10
miles
Respondent determined that 15 percent of petitioner's use of the station wagon was for business and 85 percent was personal. OPINION Petitioner deducted all of his expenses (except gasoline put in the car by his wife or children) and depreciation on his business automobile on the theory that even when it was used for personal reasons he was nonetheless always subject to call and therefore the car was being used for business. *228 Respondent maintains that only 15 percent of the claimed expenses (and 15 percent of the depreciation) is deductible. Petitioner uses the following calculations to show that at least a large part of the driving expenses are business related: Average Miles Per Day
(Based on 5.5 days per
week and 50 weeks per
Item
year)
Travel from home to St. Mary's
Hospital every day
13.0
Travel from hospital to office
every day
3.0
Travel to home from hospital or
from office or from nursing home
13.0
Travel to and from nursing home
from hospital or home
[4 miles times 20 days divided by
275 days]
.29
Emergency trips from home to hospital
[once a month -- 26 miles
divided by 22 days]
1.18
Travel from home to and from quarterly
medical socieity meetings in downtown
Minneapolis [20 miles times
4 divided by 275]
.29
Travel from office to and from quarterly
staff meetings at hospital
[6 miles times 4 divided by 275]
.10
Travel to and from state medical society
annual meeting at either Rochester or
Duluth, Minnesota [average
of round trip to Duluth -- 320 miles --
and round trip to Rochester -- 180 miles --
divided by 275]
.91
Daily subtotal
31.77
Total per year [daily subtotal of 31.77
miles times 5.5 days times 50 weeks]
8,736.50
*229 Travel for Personal Purposes
We do not believe that trips for personal purposes, for commuting to work, or for attending social events, are properly deductible. There is nothing in the record to suggest that petitioner would have used mass transit to social events even if he were not on call. Although it was necessary for petitioner to have his car immediately available at all times because he was on call, we do not believe this is sufficient to convert inherently personal expenses into deductible business expenses. Sapp v. Commissioner,36 T.C. 852 (1961), affd. 309 F.2d 143 (5th Cir. 1962). Vesey v. Commissioner,T.C. Memo. 1974-163, and Cassidy v. Commissioner, a Memorandum Opinion of this Court dated January 15, 1951, relied upon by petitioner, do not hold otherwise. Additionally, petitioner's wife and children sometimes used the car. While petitioner testified that his business use of his other care equalled his family's personal *230 use of his business car, it does not necessarily follow the expenses incurred in operating different cars would equal out. Travel from Home to St. Mary's and to Office.
We must now determine whether petitioner's travel between St. Mary's and home, his office and home, and St. Mary's and his office, are deductible. If a taxpayer having only one employer is required to work in two different locations in one day, and the second place of employment is further from his home than is his main business office, then the increased costs from driving home from that second location over the cost of driving home from his main office are deductible. Green v. Commissioner,59 T.C. 456 (1972). Similarly, if a taxpayer with only one principal place of work makes business-related stops either before or after proceeding to his office, or makes business-related stops without ever going to his office, then expenses of traveling from his residence to his first business-related stop in the morning and from his last business-related stop to his home in the evening, to the extent that *231 the distance traveled does not exceed the distance from his home to his office, are non-deductible commuting expenses. Laurano v. Commissioner,69 T.C. 723 (1978). Cf. Norwood v. Commissioner,66 T.C. 467 (1976). Additionally, if a taxpayer has several regular places of work, then commuting expenses from a taxpayer's home to his first jobsite and from his last jobsite to his home are not deductible, for that reason alone, even when the employer, or the nature of the taxpayer's job or occupation requires the taxpayer to have a car available to him to drive to other job locations during the day. Steinhort v. Commissioner,335 F.2d 496 (5th Cir. 1964), affirming T.C. Memo. 1962-233; Feistman v. Commissioner,63 T.C. 129 (1974), Sapp v. Commissioner,supra.
To apply these rules in the present case, we must first determine whether petitioner conducted his medical practice at both his office and St. Mary's. Petitioner agrees that his office was a regular place of work but contends that *232 St. Mary's was not a regular place of work. Petitioner typically started each work day at St. Mary's and spent his entire morning there. He worked at least one weekend out of four at St. Mary's, and was also Director of the Department of Nuclear Medicine for which he was paid $1,000 per month. He received additional fees for performing electrocardiogram readings and interpreting nuclear tests. In total, petitioner received 25 percent of his gross medical revenue from his various positions at St. Mary's. On these facts, we believe that St. Mary's was a second regular place of work. Accordingly, petitioner's driving expenses to St. Mary's from home or from St. Mary's to home are non-deductible in their entirety as are his commuting expenses to and from his office. Furthermore, because St. Mary's is one of the petitioner's regular places of work, travel to it to handle emergency cases is also a personal commuting expense. O'Hare v. Commissioner,54 T.C. 874 (1970; Sheldon v. Commissioner,50 T.C. 24 (1968); Marot v. Commissioner,36 T.C. 238 (1961). [1]
*233 Travel between St. Mary's and office, to Methodist and Fairview Hospitals, to Medical Scoeity Meetings, and to Nursing Home
Respondent concedes that where a taxpayer is employed by two different employers on the same day, he may deduct the cost of traveling, including depreciation attributable thereto, between the two places of employment. [2]Green v. Commissioner,supra;Fausner v. Commissioner,55 T.C. 620 (1971); Sapp v. Commissioner,supra;Heuer v. Commissioner,32 T.C. 947 (1959), affd. 283 F.2d 865 (5th Cir. 1960).[3] Thus trips petitioner made between his office and St. Mary's are deductible. Petitioner also incurred deductible expenses in visiting patients at Methodist Hospital and in traveling to the nursing home from his office and in traveling to and from medical society meetings. However, expenses from the nursing home to his home would be non-deductible since, although not a regular place of work, it was not further from home than is St. Mary's. [4]
*234 Based on the record, we cannot make an exact computation of the percentage of business use to which petitioner put his station wagon but we believe he has not overcome his burden of proof as to respondent's determination. [5] We, therefore, uphold that determination that only 15 percent of the usage of the station wagon was business related. Decision will be entered for the Respondent.
Footnotes
1. Petitioner again relies on Sapp v. Commissioner,supra,Vesey v. Commissioner,supra, and Cassidy v. Commissioner,supra, this time to establish that travel to and from the hospital is deductible. These cases do not establish such a broad proposition. Rather in applying these rules to a professional person in the conduct of his profession, we have noted that expenses incurred in emergency or house calls to patients made by a doctor may be deductible. See Teer v. Commissioner,T.C. Memo. 1964-80. But, as the cases cited above indicate, this is not true where the call is made to a regular place of business. See also Douglas v. Commissioner,T.C. Memo. 1979-224; Gwinner v. Commissioner,T.C. Memo. 1975-270↩.
2. We need not decide for purposes of this case whether petitioner was an independent contractor at St. Mary's or an employee, since in either case the cost of travel between his office and St. Mary's is deductible.↩
3. See also Arnold v. Commissioner,T.C. Memo. 1978-465↩. 4. Petitioner apparently visited the nursing home after going to his office or hospital or went to the nursing home before his other places of work. He did not, therefore, make a special trip from home to the nursing home to see his patient there.↩
5. Petitioner's table showing 8,736.50 miles traveled to business supports this view. As we held above, travel between his home and St. Mary's (including emergency trips), between his office and home, and from the nursing home to his home, are not deductible. Therefore, using petitioner's calculations, only 4.59 miles a day (out of his claimed 31.77 miles) were business-related, or 1,262 miles during the year. Since petitioner drove between 10,000-12,000 miles, this represents less than 13 percent of the mileage.Although petitioner did not include in his table all of his travel (listing only 8,736-1/2 miles of the 10,000-12,000 miles claimed), it appears that only a small portion of the amount not listed is business related.↩