LELAND M. FILLERUP AND RUELENE J. FILLERUP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fillerup v. Commissioner
Docket Nos. 12408-80; 1542-82.
United States Tax Court
T.C. Memo 1988-103; 1988 Tax Ct. Memo LEXIS 125; 55 T.C.M. (CCH) 362; T.C.M. (RIA) 88103; March 8, 1988. *125 L was a medical doctor who purchased a model 6.9 Mercedes-Benz in 1977 for transportation in connection with his medical practice. L maintained separate medical offices and made rounds at two different hospitals. Ps deducted all of L's transportation costs, including the costs of his commute between his residence and the places where he conducted his medical practice. The Commissioner allowed 80 percent of the claimed transportation costs and disallowed the remaining 20 percent as commuting costs. On their 1977 Federal income tax return, Ps also claimed a "bonus" depreciation deduction pursuant to I.R.C. section 179, but only claimed a five-year useful life for the automobile. Held, Ps are not entitled to deduct the costs of L's commute between his residence and places where he conducted his medical practice. Held further, Ps are not entitled to a bonus depreciation deduction because I.R.C. section 179, in effect during the year in issue, requires that the property for which the deduction is claimed have a useful life of six years or more. Edward B. Simpson, for the petitioners. Charlotte Mitchell, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINIONS NIMS, Judge: *126 Respondent determined the following deficiencies and additions to petitioners' income tax: Additions to Tax
Year
Deficiency
Section 6651(a) [1]
Section 6653(a)
1976
$  69,814
--
--
1977
131,866
$ 13,187
$ 6,592
After concessions, [2] the issues remaining for decision are (1) whether petitioners are entitled to deduct all the expenses attributable to Dr. Fillerup's use of his automobile; and (2) whether petitioners are entitled to additional first-year depreciation under section 179 for the automobile used by Dr. Fillerup in his business during 1977.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated hereby by this reference. Petitioners *127 were residents of Paradise, California, when they filed their petitions in this case. Petitioner Leland M. Fillerup was a medical doctor engaged in the practice of medicine in and around the area of Paradise, California, during the years in issue. Dr. Fillerup specialized in the fields of obstetrics and gynecology. Dr. Fillerup maintained medical offices in both Paradise, California, and Chico, California, and he had hospital privileges and use of hospitals in both Paradise and Chico. Dr. Fillerup's residence was in Paradise. Feather River Hospital in Paradise was located approximately three miles from Dr. Fillerup's residence. His medical office in Paradise was approximately six miles from his residence. Dr. Fillerup's medical office in Chico was approximately 24 miles from his residence. The distance between the Enloe Hospital in Chico and Dr. Fillerup's residence was approximately 24 1/2 miles. As part of his normal daily routine, Dr. Fillerup would drive from his residence to the Feather River Hospital in Paradise to make rounds and then drive to the Enloe Hospital in Chico to make rounds. Then Dr. Fillerup would drive to his medical offices. Later he would return to both *128 hospitals to make rounds before going home in the evening. Dr. Fillerup rarely went to his medical offices first after leaving his residence in the morning; his first stop was usually at one of the hospitals where he worked. He never went home for lunch. Dr. Fillerup was constantly on call for medical emergencies and was often required to travel by automobile from his home to one of his offices or to one of the hospitals on emergency calls. On rare occasions on his return home at the end of a business day, Dr. Fillerup would stop to pick up something at the cleaners, to go to the grocery store or to visit friends. Dr. Fillerup never saw patients or did any work at home. However, he had numerous telephone calls from patients at home. In 1974 Dr. Fillerup purchased a 1974 model 450SE Mercedes-Benz automobile that he used in his medical practice. In July, 1977, Dr. Fillerup traded the 450SE Mercedes-Benz for a 1977 model 6.9 Mercedez-Benz for use in his medical practice. As of the date of trial, the mileage on the model 6.9 Mercedes-Benz was approximately 200,000. For the taxable year 1977 petitioners claimed the amount of $ 3,760 as an automobile expense in connection with Dr. Fillerup's *129 medical practice. The $ 3,760 represented 100 percent of the automobile expenses claimed to have incurred during that year. Respondent allowed 80 percent of this deduction as a business expense and disallowed 20 percent of the deduction for petitioners' personal use of the car. Respondent also disallowed 20 percent of the depreciation claimed for the 1977 model 6.9 Mercedes-Benz. On their 1977 income tax return, petitioners claimed $ 4,000 as first year "bonus" depreciation for the 1977 Mercedes. On the same return petitioners claimed a five-year useful life for the car for depreciation purposes. Dr. Fillerup used the 1977 Mercedes in his business for six or more years. Respondent disallowed this $ 4,000 deduction in full. OPINION
Issue 1: Commuting expenses
Respondent takes the position that 20 percent of the automobile expenses and 20 percent of the depreciation on the 1977 Mercedes claimed for 1977 is nondeductible because that amount represents a reasonable allocation of the expenses to Dr. Fillerup's personal use of the 1977 Mercedes for commuting between his residence and the various places where he conducted his medical practice. Petitioners maintain that all the expenses *130 attributable to the use of the automobile are deductible because the Mercedes-Benz was an essential tool of Dr. Fillerup's business. It is well established that a taxpayer's cost of commuting between his residence and his place of employment is a nondeductible personal expense. Sections 1.162-2(e),1.262-1(b)(5), Income Tax Regs.; see, e.g., Fausner v. Commissioner,413 U.S. 838, 839 (1973); Commissioner v. Flowers,326 U.S. 465, 473 (1946); McCabe v. Commissioner,688 F.2d 102 (2d Cir. 1982), affg. 76 T.C. 876 (1981). This rule precludes the deduction by a physician of the cost of commuting to and from his residence when traveling to his medical office, a hospital or any other location integral to his business, even when the physician is required to travel from his residence on emergency calls. Sheldon v. Commissioner,50 T.C. 24 (1968); Sapp v. Commissioner,36 T.C. 852 (1961), affd. per curiam 309 F.2d 143 (5th Cir. 1962). However, a commuter who incurs additional expenses because he has to transport his tools to work may deduct the additional expenses under section 162. See Fausner v. Commissioner,413 U.S. at 839; McCabe v. Commissioner, 76 T.C. at 879. Petitioners maintain *131 that Dr. Fillerup's Mercedes was an essential "tool" of his business because he had to have the automobile with him at all times to meet his emergency patients. To deduct his expenses under the "tool" exception, however, a taxpayer must prove not only that he carried his tools to work, but that the same commuting expenses would not have been incurred had he not been required to carry the tools. Thus, if the taxpayer would have driven to work in any event, the fact that he carried tools with him is not an additional expense, and no part of the commuting cost is deductible. Feistman v. Commissioner,63 T.C. 129 (1974), appeal dismissed 587 F.2d 941 (9th Cir. 1978). Accordingly, even if the present situation might be analogized to the tool-carrying cases, petitioners have failed to establish that they are entitled to any deduction in respect to Dr. Fillerup's commuting expenses. Petitioners offered no evidence suggesting that absent the necessity that Dr. Fillerup have his car at work, he would not have driven to his places of work in any event. Petitioners also failed to present evidence to show that respondent's allocation of commuting expenses was incorrect. Accordingly, respondent's *132 determinations on this issue must stand.
Issue 2: Additional First-Year Depreciation Allowance
On their 1977 Federal income tax return, petitioners claimed $ 4,000 as a first-year "bonus" depreciation deduction for their 1977 model 6.9 Mercedes-Benz. Section 179[3] *133 as in effect during year year in issue allowed additional first-year depreciation on newly-acquired depreciable property "with a useful life (determined at the time of such acquisition) of 6 years or ore." Section 179(d)(1)(C). Petitioners claimed a five-year useful life for the 1977 Mercedes-Benz on their 1977 Federal income tax return. Now they claim that the useful life of the automobile was really six years. It is true that an estimated useful life previously assumed can be changed, but the modification must be based on conditions known to exist at the end of the taxable year, and the useful life of an asset is redetermined only when there is a clear and convincing basis for the redetermination. Section 1.167(a)-1(b), Income Tax Regs. Petitioners have failed to meet their the burden of proof on this *134 issue. Rule 142(a). Petitioners have not shown a clear and convincing basis for a redetermination of the useful life of the car. The only proof offered by petitioners was Dr. Fillerup's own estimate that because the 197 model 6.9 Mercedes-Benz was a "relatively classic car" and a "relatively limited edition," he expected to hold the car and use it in his medical practice for six years or more. We do not consider this self-serving testimony sufficient to satisfy petitioners' burden of proof. Although petitioners are not bound by the position they took on their 1977 return, this is a factor to be considered. Casey v. Commissioner,38 T.C. 357, 384 (1962). The fact that they claimed a five-year useful life for the Mercedes-Benz is significant. Either the classic car and limited edition factors were known to exist when petitioners filed their 1977 return, in which case the original five-year useful life estimate was based upon these known facts, or the classic car factor developed in later years, in which case petitioners are merely seeking to apply hindsight to change their election, which section 179(d)(1)(C) does not permit them to do. We hold that the proper useful life for the *135 1977 model 6.9 Mercedes-Benz was five years, and petitioners are not entitled to the bonus depreciation that was permitted under section 179 during the year in issue. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. All of the issues in docket No. 12408-80, which concerns the taxable year of 1976, have been settled. In docket No. 1542-82, which concerns the taxable year 1977, respondent has conceded the additions to tax and the parties have settled all the other issues except those that remain in this case. ↩
3. Section 179 as in effect during the taxable year 1977 provided in part: SEC. 179. ADDITIONAL FIRST-YEAR DEPRECIATION ALLOWANCE FOR SMALL BUSINESS. (a) GENERAL RULE. -- In the case of section 179 property, the term "reasonable allowance" as used in section 167(a) may, at the election of the taxpayer, include an allowance, for the first taxable year for which a deduction is allowable under section 167 to the taxpayer with respect to such property, of 20 percent of the cost of such property. * * * (d) DEFINITIONS AND SPECIAL RULES. -- (1) SECTION 179 PROPERTY. -- For purposes of this section, the term "section 179 property" means tangible personal property -- (A) of a character subject to the allowance for depreciation under section 167, (B) acquired by purchase after December 31, 1957, for use in a trade or business or for holding for production of income, and (C) with a useful life (determined at the time of such acquisition) or 6 years or more. Section 202(a) of the Economic Recovery Act of 1981, Pub. L. 97-34, 95 Stat. 172, amended sections 179(a) and 179(d). These amendments apply to property placed in service after December 31, 1980, and therefore do not apply in this case. Nor do subsequent amendments to section 179(d)↩ apply to property placed in service during the year in issue in this case.