**CAROLINA, CLINCHFIELD AND OHIO RAILWAY COMPANY, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 1204, Docket 87–4003.

United States Court of Appeals, Second Circuit.

Argued June 3, 1987.
Decided July 10, 1987.

D. French Slaughter, III, Richmond, Va. (James T. Lyon, Michele A. Wood, McGuire, Woods, Battle & Boothe, Richmond, Va., on the brief), for petitioner-appellant.

David I. Pincus, Tax Div., Dept. of Justice, Wash., D.C. (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup, Robert S. Pomerance, Tax Div., Dept. of Justice, Wash., D.C., on the brief), for respondent-appellee.

Before NEWMAN and WINTER, Circuit Judges, and BONSAL,[*] Senior District Judge.

PER CURIAM:

Carolina, Clinchfield and Ohio Railway Company ("CC & O") appeals from a decision of the United States Tax Court (Richard C. Wilbur, Judge) determining deficiencies in its federal income taxes of approximately $1,066,000 for the taxable years 1972 through 1975. 82 T.C. 888 (1984). The principal issues concern the tax consequences of a 999–year lease between CC & O as lessor and two other railroads, Atlantic Coast Line Railroad Company and Louisville & Nashville Railroad Company, as lessees.

The term of the lease began in 1923. CC & O leased all of its railroad properties to the lessees. The lessees agreed to pay an annual rent of $1,250,000 and assumed other obligations. Pertinent to this appeal are the lease provisions concerning the lessor's bonds. The lessor agreed to furnish to the lessees new bonds or other obligations of the lessor sufficient to reimburse the lessees for the cost of retiring the lessor's original bonds as they mature. The lessees agreed to sell the new bonds and apply the proceeds to retire the original bonds. Provision was also made to protect the lessees in the event the lessor defaulted on its obligations and the lessees paid the principal of the maturing bonds to protect their investment in the railroad properties. Also pertinent is the provision for settlement of accounts at the termination of the lease in the year 2922. Under this provision, the lessees will return all leased properties, and the lessor will pay various sums including the excess of the value of additions and betterments plus any amounts expended by the lessees to pay the principal of the lessor's bonds over the sums reimbursed by the lessor to the lessees through new bonds or other obligations. The lessor's payment obligation at termination of the lease is limited, however, to the then existing fair value of the returned leased property.

To reflect its obligation to the lessees, the lessor maintained on its books an open account indebtedness to which it added $336,000 per year as "reimbursement" of its lessees for obtaining cancellation of its bonds as they matured. The lessor also added to its open indebtedness account the costs incurred by the lessees for improvements to the leased property. At the end of 1975 the open account indebtedness on the books of CC & O stood at approximately $23 million. The Commissioner asserts, and the taxpayer does not dispute, that the present value of this obligation to pay $23 million at the end of the 950–year period the lease still has to run, using an interest rate of six percent, is two quadrillionths of a cent.

The initial issue is whether the Tax Court was correct in rejecting the taxpayer's contention that it realized income upon the cancellation of its bonds only to the extent that its discharged bond liabilities exceeded the increased liabilities to the lessees. The taxpayer relied on a theory that the cancellation of the old debt did not give rise to taxable income to the extent it was replaced with substituted debt. *See Great Western Power Co. v. Commissioner,* 297 U.S. 543, 56 S.Ct. 576, 80 L.Ed. 853 (1936).

* The Honorable Dudley B. Bonsal of the United States District Court for the Southern District of New York, sitting by designation.

The Tax Court did not doubt the theory but rejected its application to the unusual facts of this case. Though accepting the taxpayer's contention that the new debt was a valid obligation of the lessor, the Tax Court found that the debt, payable in the year 2922 and limited by the then value of the leased property, was contingent, might never be repaid, and "cannot be deemed a substitute for the liability [discharged] because of the fundamental differences between the two obligations." 82 T.C. at 898.

■ The second issue concerns the taxpayer's claim for an investment tax credit based on the cost of additions and betterments to the leased property. These costs were paid for by the lessees. The taxpayer claims entitlement to the investment credit ultimately on the theory that the increase in its open indebtedness account, attributed to the lessees' expenditures, entitles it to establish a cost basis for purposes of the investment credit. The Tax Court rejected the claim, noting the possibility that the taxpayer "will not pay one cent on its alleged capital investment in these assets for nearly 10 centuries, if at all." *Id.* at 905.[1]

The third issue concerns the taxpayer's claim to deduct amortization on a claimed capital investment in gradings and bores made on the leased property after 1925. The Tax Court rejected the amortization deductions, finding, as with the investment credit claim, insubstantial evidence of a capital investment on the part of the taxpayer.

We have considered all of the taxpayer's contentions and reject them for the reasons comprehensively set forth in the opinion of the Tax Court.

Affirmed.

---

**1.** At oral argument, counsel for the Commissioner conceded that the investment tax credit would be available to the lessees.