DENNIS L. HAMBY AND CAROL A. HAMBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamby v. Commissioner
Docket No. 13506-86.
United States Tax Court
T.C. Memo 1988-555; 1988 Tax Ct. Memo LEXIS 584; 56 T.C.M. (CCH) 783; T.C.M. (RIA) 88555; December 7, 1988. Raymond Erlach, for the petitioners. Allan Hill, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Tax Year
Deficiency
Section 6653(a)(1) [1]
1982
$12,513
$626
1983
15,802
$750
*587 Section 6653(a)(2)
Section 6661
1982 *
$1,251
1983 *
$1,580
After concessions, [2] the issues for decision are:
(1) Whether petitioners (a) are entitled to depreciation deductions in 1982 and 1983 with respect to a 1955 Mercedes Benz automobile owned by petitioner Dr. Dennis L. Hamby, and (b) are entitled to an investment tax credit with respect to such automobile in 1982 and an investment tax credit with respect to capitalized improvements to such automobile in 1983. (2) Whether, when petitioners removed the 1955 Mercedes Benz automobile from service in February 1983, it ceased to be section 38 property within the meaning of section 48(a)(1) and section 47(a)(1), thus triggering the *588 total recapture of the claimed investment tax credits. (3) Whether petitioners are entitled to a deduction in the amount of $ 1,637 for car repair expenses claimed on their 1983 Federal income tax return. (4) Whether petitioners are subject to additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2) for the 1982 and 1983 taxable years. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Dr. Dennis L. Hamby and Carol A. Hamby, husband and wife, resided in San Francisco, California, at the time the petition herein was filed. Petitioner Dr. Dennis L. Hamby ("Dr. Hamby") was a licensed physician in San Francisco, California, with a specialty in gastroenterology in 1982 and 1983. Dr. Hamby was on the staff of, and treated patients at, St. Marys and Seton Hospitals, and maintained a separate medical office at a third location. All of such places of employment were located in close proximity to each other in the San Francisco area. On November 8, 1982, Dr. Hamby purchased a 1955 Mercedes Benz 300 SL Gullwing Coupe ("Gullwing") for $ 56,411 *589 including sales tax and license fees. Dr. Hamby started driving the Gullwing on November 9, 1982, and continued to drive it every work day that it was operational, until February 17, 1983. On a typical work day during this period, Dr. Hamby would drive the Gullwing from home to and between St. Marys and Seton Hospitals and usually back to St. Marys Hospital in the morning before driving the Gullwing back home again by early afternoon. Dr. Hamby would generally have set up appointments to see patients in the early and late morning at St. Marys Hospital, and at Seton Hospital in the middle of the morning. Occasionally, he would return directly home from Seton Hospital after seeing patients at St. Marys and not return to St. Marys Hospital. In the afternoons, Dr. Hamby would go to his medical office on the days that he maintained office hours and would always use an automobile other than his Gullwing for this purpose. [3]
St. Marys Hospital is 1 mile from Dr. Hamby's home. Seton Hospital is 8.3 miles from St. Marys Hospital. *590 Seton Hospital is 7.3 miles from Dr. Hamby's home. When Dr. Hamby returned to St. Marys Hospital from Seton Hospital before returning home, he would have driven a total of 2 miles driving between his home and St. Marys Hospital and back home from St. Marys Hospital per day, and 16.6 miles driving from St. Marys Hospital to Seton Hospital and back to St. Marys Hospital per day. On days when Dr. Hamby went directly home from Seton Hospital, he would have driven a total of 8.3 miles between his home and work and back again per day and 8.3 miles driving between St. Marys and Seton Hospitals. Petitioners did not maintain contemporaneous records of the use of the Gullwing. In preparation for trial, petitioners attempted to reconstruct Dr. Hamby's use of his Gullwing during the last two months in 1982 and the first two months in 1983, the only months the Gullwing was driven during the two years at issue. In compiling reconstructed records, petitioners tried to determine where Dr. Hamby was on various work days from November, 1982, through February, 1983, by examining his handwritten patient records, records which indicated the names and room numbers of patients Dr. Hamby had treated *591 at St. Marys and Seton Hospitals during such period. Petitioners then attempted to remember which days during this period the Gullwing was not operational due to repairs. From these patient records and memory, petitioners compiled reconstructed records of Dr. Hamby's use of the Gullwing for this four month period. The reconstructed mileage records compiled reflect the dates the Gullwing was allegedly driven, the nature of travel as being either "commuting" or "business," Dr. Hamby's destinations with respect to such travel, and the number of miles traveled to reach such destinations. Travel designated as "commuting" was that travel by Dr. Hamby between his home and a designated hospital location (St. Marys or Seton Hospitals) and from a hospital location back home. Travel designated as "business" was travel between hospital locations. Petitioners' mileage records reflect that the Gullwing was rarely used for any travel other than travel from home to and between St. Marys and Seton Hospitals and back home. In all, the mileage records reflect that Dr. Hamby drove the Gullwing on approximately 50 different dates between November 9, 1982 and February 17, 1983, 22 dates in 1982 and *592 28 dates in 1983. For 1982 and 1983, respectively, these reconstructed records indicate 315.4 and 440.9 miles of "business" travel, and 98.4 and 149.9 miles of "commuting" travel. In terms of percentages, approximately 75 percent of these miles traveled for both years is listed as "business" travel and 25 percent as "commuting" travel. The total miles on these mileage records indicate that the car was driven 1,004.6 miles between November 8, 1982 and February 17, 1983. However, from November 8, 1982, until April, 1985, the difference in odometer readings on the Gullwing indicated that the Gullwing was driven a total of 1,030 miles for this entire period. From November, 1983, until April, 1985, the Gullwing was test driven by Dr. Hamby's mechanic on a few occasions in late 1982 and early 1983 after certain repairs were performed on the Gullwing. Further, the Gullwing was driven for a short period in 1984 by Dr. Hamby during the only period in 1984 that the Gullwing was operational. This additional use of the Gullwing is not reflected on petitioners' reconstructed mileage records. Dr. Hamby drove one of six other automobiles he owned when he drove to any destination other *593 than St. Marys or Seton Hospitals, and never drove the Gullwing to his office or to any destination other than the two hospitals. Dr. Hamby would also drive one of these other automobiles he owned to St. Marys and Seton Hospitals when the Gullwing was not operational. During the period from November 8, 1982, the purchase date of the Gullwing, through the end of February, 1983, Dr. Hamby experienced many mechanical difficulties with the Gullwing which required frequent repair work. Most of the repairs were performed in Dr. Hamby's driveway by a hired mechanic. When the Gullwing required repairs, Dr. Hamby's mechanic would arrive at petitioners' residence in the afternoon soon after Dr. Hamby returned from his rounds at the hospitals and, with some assistance from Mrs. Hamby, he would repair the Gullwing in petitioners' garage. The only repair which could not be performed at petitioners' residence in 1982 was a replacement of the Gullwing's brakes which took several days and was fixed at the mechanic's residence in December, 1982. In early 1983, the Gullwing continued to be plagued by mechanical problems. The engine began to routinely overheat. It became apparent by the end *594 of February of that year that the Gullwing's engine would have to be removed and completely overhauled. From March, 1983, when the overhaul work began, until sometime in 1984, the Gullwing was not driven. For a short period sometime in 1984, the Gullwing was again used by Dr. Hamby. Problems with the Gullwing again developed shortly thereafter, necessitating additional extensive repairs that were not completed until April, 1985, at which time the Gullwing was again drivable on a daily basis. On May 1, 1983, about two months after the Gullwing overhaul began, petitioners cancelled their insurance coverage on the Gullwing. This insurance policy contained no restrictions as to the use of the insured vehicle. The Gullwing remained uninsured until October 27, 1983, when petitioners reinsured it with "antique" insurance coverage. This insurance policy was effective through at least all of 1984. Pursuant to the terms of the policy, the Gullwing must be used mainly for car club activities, exhibits, parades or a private collection. No liability or other insurance coverage is provided if the vehicle is used in the business or occupation of the insured person or driven to or from work. *595 On their 1982 and 1983 Federal income tax returns, petitioners claimed depreciation deductions with respect to the Gullwing based on a reported basis of $ 63,534. On their 1983 Federal income tax return, petitioners claimed a depreciation deduction with respect to certain capitalized repairs to the Gullwing costing $ 24,540. [4] Also on the returns, petitioners claimed an investment tax credit in 1982 and in 1983 with respect to the Gullwing and capitalized repairs to the Gullwing, respectively. Additionally, on their 1983 return petitioners claimed a deduction for the cost of certain repairs to the Gullwing. Petitioners did not take into account any personal use of the Gullwing when claiming depreciation deductions and investment tax credits with respect to the Gullwing. In his notice of deficiency, respondent *596 determined that all of Dr. Hamby's use of the Gullwing was personal and disallowed all of petitioners' claimed depreciation deductions, investment tax credits and car repair expense deductions with respect to Dr. Hamby's Gullwing for 1982 and 1983. OPINION The first issue is whether petitioners are entitled to depreciation deductions and investment tax credits with respect to the Gullwing and its capitalized repairs in 1982 and 1983. Initially, this issue turns on the extent to which Dr. Hamby's business use of the Gullwing has been proven. Respondent takes the position that petitioners' depreciation deductions and investment tax credits claimed with respect to the Gullwing are not allowable for the reason that petitioners failed to prove that the Gullwing was ever used in Dr. Hamby's business. Petitioners, however, assert that the Gullwing was used exclusively for business purposes for the years at issue. Our inquiry is first to determine to what extent, if any, Dr. Hamby's Gullwing was used in his business in 1982 and 1983 and, second, to determine whether petitioners are entitled to depreciation deductions and an investment tax credit with respect to the Gullwing for such *597 years. The parties agree that if the Gullwing were used by Dr. Hamby in his trade or business then the Gullwing is property qualifying for an investment tax credit ("section 38 property"), and is depreciable recovery property. The parties also agree that if we find that the Gullwing was not used entirely in Dr. Hamby's trade or business, only that portion of the adjusted basis of the Gullwing which is attributable to business use, as opposed to personal use, may be subject to depreciation or claimed for purposes of determining the investment tax credit. See sec. 1.48-1(b)(2), Income Tax Regs.
We will first determine to what extent, if any, the Gullwing was used in Dr. Hamby's business in 1982 and 1983. Petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Based on petitioners' mileage records and admissions at trial, it is clear that the Gullwing was used by Dr. Hamby, at least in part, for purposes of commuting to and from St. Marys or Seton Hospitals, representing Dr. Hamby's travel from home to *598 his first place of employment and from his last place of employment back home. It is well settled that expenses with respect to commuting are nondeductible personal expenses, but that expenses with respect to going from one place of employment to another are deductible business expenses. Secs. 1.162-1(b)(5), 1.262-2(c), Income Tax Regs.; Fausner v. Commissioner,413 U.S. 838 (1973); Commissioner v. Flowers,326 U.S. 465 (1946); Heuer v. Commissioner,32 T.C. 947 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960); Sapp v. Commissioner,36 T.C. 852 (1961), affd. per curiam 309 F.2d 143 (5th Cir. 1962). Dr. Hamby's travel directly from his home to one of the two hospitals at which he attended patients, and back home from the last of these two hospitals visited represent commuting. The expenses and depreciation attributable to such travel are clearly nondeductible commuting expenses. The fact that Dr. Hamby's destination was a hospital rather than an office does not change that result. See *599 O'Hare v. Commissioner,54 T.C. 874, 875 (1970). Petitioners attempted to substantiate that the entire use of the Gullwing was business use by reconstructing Dr. Hamby's use of the Gullwing in 1982 and 1983. Petitioners' mileage records label approximately 75 percent of the travel in the Gullwing as "business" for both years, representing the travel between St. Marys and Seton Hospitals. If we were to find that petitioners' mileage records, as corroborated by their testimony, are reliable, we can conclude that no more than 75 percent of the use of the Gullwing was business-related during the period of time the Gullwing was operational, since 25 percent of the use of the Gullwing was admittedly for commuting by Dr. Hamby to and from his places of employment. Respondent argues that all of Dr. Hamby's use of the Gullwing was for commuting. Respondent asserts that petitioners' mileage records should be disregarded entirely on the grounds that such records are ostensibly inconsistent with the evidence presented at trial. Respondent asserts that if one adds up the 1,004.6 miles of Dr. Hamby's reconstructed use of the Gullwing in late 1982 and early 1983 as reflected *600 on their mileage records, plus the undetermined test-drive miles by petitioners' mechanic, and plus Dr. Hamby's temporary use of the Gullwing in 1984, one would arrive at a figure greater than the total mileage of 1,030 registered on the odometer between November 1982 and April, 1985. By virtue of a possible inconsistency between petitioners' mileage records and the actual distance traveled by the Gullwing over a two and one-half year period, respondent asserts that it is appropriate for us to reject all of petitioners' evidence and testimony as unreliable, if not incredible. Therefore, respondent concludes that, since we should not consider the mileage records or petitioners' testimony as credible evidence, the record in this case is barren of any evidence which objectively establishes any business usage of the Gullwing by Dr. Hamby. We disagree. We find that the testimony of petitioners was straightforward and credible, and that it further corroborates their attempt at reconstructing the business use of the Gullwing. We realize that petitioners faced a difficult task in reconstructing their use of the Gullwing nearly six years after such use occurred. Petitioners, *601 however, made an honest and good-faith attempt to reconstruct such records. The fact that petitioners may have overstated the total miles in their mileage records is not fatal to petitioners' case. Petitioners established that Dr. Hamby had a fairly established routine regarding his use of the Gullwing and that such use varied only in that, occasionally, he returned home from Seton Hospital which is 7.3 miles from his home rather than from St. Marys Hospital which is 1 mile from his home. We believe that there was no other use of the Gullwing by Dr. Hamby except for travel from home to and between hospital locations and back home, except for perhaps some minor incidental use of the Gullwing. Petitioners' attempt to reconstruct Dr. Hamby's use of the Gullwing, while perhaps not 100 percent accurate, nevertheless represents what we believe is a close approximation of Dr. Hamby's limited use of the Gullwing in 1982 and 1983. Recognizing that there may possibly be some inaccuracies in petitioners' mileage records, and applying our best estimate of the business use of the Gullwing bearing against petitioners who have failed to keep adequate records, we hold that 70 percent of the *602 use of the Gullwing was business-related during the period in 1982 and 1983 that such vehicle was operational. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Accordingly, we hold that petitioners are entitled to 70 percent of the allowable depreciation with respect to the Gullwing in 1982. We must next determine whether petitioners are entitled to depreciation deductions with respect to the Gullwing in 1983. Respondent argues that if we find that the Gullwing was used as a business vehicle in early 1983, that it was no longer used as such when Dr. Hamby discontinued driving the Gullwing on February 17, 1983, so that his mechanic could begin to overhaul the Gullwing.
Section 168(d)(2)(B) provides that if recovery property (with the exception of certain recovery property not here relevant) is "disposed" of within a taxable year, then no depreciation deduction is allowed for such year with respect to such property. A "disposition" for this purpose includes a "retirement." Sec. 168(d)(2)(C). Section 1.167(a)-8(a), Income Tax Regs., *603 defines both a "retirement" and a "disposition," generally, as the permanent withdrawal of property from use in a taxpayer's trade or business or in the production of income. See also sec. 1.168-2(1)(1), Proposed Income Tax Regs.
Petitioners argue that the Gullwing was never retired or disposed of when it was removed from service to be overhauled. They assert that they intended to restore the Gullwing to its prior business use once the overhaul was completed. Accordingly, petitioners argue that they withdrew the Gullwing from Dr. Hamby's business only temporarily and not permanently. It is petitioners' contention that the Gullwing remained "devoted" to business use during the period of two and one-half years that the Gullwing was being overhauled. See P. Dougherty Co. v. Commissioner,5 T.C. 791 (1945), affd. 159 F.2d 269 (4th Cir. 1947). Based on the entire record, we find that the petitioners failed to prove that they did not permanently withdraw the Gullwing from use in Dr. Hamby's trade or business when Dr. Hamby ceased driving the Gullwing on February 17, 1983, to have the engine removed and the Gullwing overhauled. Petitioners assert *604 that the Gullwing was only temporarily removed from business use. Petitioner, however, failed to provide any evidence that, once the Gullwing was again operational, it resumed its prior use as a business automobile. There is nothing in the record to establish that the Gullwing was used to any degree in Dr. Hamby's business in 1984 when it was operational for a short period, or in 1985 when it was again capable of being used on a daily basis. Also relevant is the fact that when the Gullwing was being overhauled, petitioners acquired a new insurance policy on the Gullwing which provided no coverage if any use of the vehicle was for business purposes. Petitioners have offered us no evidence to support a holding that the Gullwing was temporarily removed from service as a business vehicle. We have to assume no such proof exists. Accordingly, we hold that petitioners retired the Gullwing for purposes of sections 168(d)(2)(B) and 168(d)(2)(C) on February 17, 1983. Therefore, petitioners are not entitled to any depreciation deductions with respect to the Gullwing in 1983. We must next determine whether petitioners are entitled to claim an investment tax credit with respect *605 to the Gullwing in 1982 and 1983. We have determined that the Gullwing was used 70 percent in Dr. Hamby's business in 1982. Therefore, petitioners are entitled to an investment tax credit calculated with respect to 70 percent of their adjusted basis in the Gullwing in 1982. Respondent argues that even if the Gullwing were used in a trade or business in early 1983, and even if the Gullwing and the capitalized repairs were otherwise eligible for an investment tax credit, section 47(a) requires that petitioners recapture, in 1983, any investment tax credit petitioners claimed in 1982 and further prevents petitioners from claiming an investment tax credit with respect to the capitalized repairs in 1983. We agree with respondent and direct our attention to the second issue involved herein. The second issue is whether the Gullwing ceased to be section 38 property when petitioners overhauled the Gullwing within one year after placing it in service, thus triggering the total recapture of all claimed investment tax credits previously taken. Section 47(a) requires the recapture of all of *606 the investment tax credit claimed with respect to section 38 recovery property if such property is disposed of, or ceases to be used in a trade or business, or held for the production of income, within one full year after such property is placed in service. See sec. 47(a)(5). Since there was no actual disposition of the Gullwing in this case, the issue is whether the removal of the Gullwing from service for an overhaul in 1983 is a cessation with the meaning of section 47(a).
The term "cessation" is not defined in the statute or regulations. The regulations, though, provide some guidance. Section 1.47-2(a)(2), Income Tax Regs., provides as follows: (2) "Cessation". (i) A determination of whether section 38 property ceases to be section 38 property with respect to the taxpayer must be made for each taxable year subsequent to the credit year. Thus in each such taxable year the taxpayer must determine, as if such property were placed in service in such taxable year, whether such property would qualify as section 38 property (within the meaning of section *607 1.48-1) in the hands of the taxpayer for such taxable year. . Section 1.47-1(c)(1)(ii), Income Tax Regs., also provides that: (ii) If during the taxable year such property ceases to be section 38 property with respect to the taxpayer -- (a) As a result of the occurrence of an event on a specific date (for example, a sale, transfer, retirement or other disposition), such cessation shall be treated as having occurred on the actual date of such event. [Emphasis added.] These regulations clearly contemplate some change in the property or its use which would render it ineligible for the investment tax credit. See Carolina, Clinchfield, & Ohio Co. v. Commissioner,82 T.C. 888 (1984), affd. 823 F.2d 33 (2d Cir. 1987). One such change in the property and its use specified by the regulations is a "retirement." Thus, the regulations contemplate that a retirement is sufficient to cause a "cessation" for purposes of section 47. We have determined that petitioners are not entitled to claim depreciation with respect to the Gullwing in 1983 because we held that the Gullwing was "retired" when the Gullwing was overhauled *608 for a period of two and one-half years beginning February 17, 1983. Likewise, we find that such retirement is sufficient, for purposes of section 47, to cause the recapture in 1983 of petitioners' investment tax credit claimed in 1982. Since such retirement occurred within one full year after the Gullwing was placed in service the recapture percentage is 100 percent. See sec. 47(a)(5). Further, such retirement precludes petitioners from claiming an investment tax credit in 1983 with respect to the adjusted basis petitioners had in their capitalized repairs to the Gullwing. [5] Accordingly, we hold that although petitioners were entitled to claim an investment tax credit in 1982, but not 1983, with respect to 70 percent of their adjusted basis in the Gullwing, they must recapture such credit in 1983 when the Gullwing ceased to be section 38 property. [6]
*609 The third issue raised in the petition is whether, petitioners are entitled to a deduction in 1983 in the amount of $ 1,637 for car repair expenses allegedly incurred in connection with the Gullwing. Petitioners contend that $ 1,637 in deductible repair expenses were incurred and that all of those expenses were attributable to Dr. Hamby's business. Petitioners, in this case, have cluttered the record with over 100 repair receipts, totaling over $ 20,000, apparently covering both the capitalized repairs, the amount of which has never been put at issue, and the $ 1,637 in repairs which is in issue. We have determined that the Gullwing was not used in Dr. Hamby's business after February 17, 1983, when it could no longer be driven by Dr. Hamby without an overhaul. We believe that such repair expenses were incurred by petitioners. However, petitioners have made no allocation of these expenses between those that were incurred before and after this date. In light of this fact, we hold that petitioners are only entitled to a pro-rata portion of these claimed expenses. We calculate this portion by multiplying the $ 1,637 in repair expenses incurred by the number of days the Gullwing *610 was used in Dr. Hamby's business in 1983 (48 days), over the number of days in 1983 (365 days), and by Dr. Hamby's percentage of business use of the Gullwing (70 percent). Accordingly, petitioners are entitled to a deduction of $ 98.22 for repairs to the Gullwing in 1983 ($ 1,637 x 48/365 x .70 = $ 150.70). The fourth issue is whether petitioners are subject to additions to tax pursuant to sections 6653(a)(1) and 6653(a)(2) for the years at issue. Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the rules and regulations. Negligence is defined as a failure to exercise the due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967); *611 Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioners bear the burden of proof on this issue. Enoch v. Commissioner,57 T.C. 781 (1972). As to the 1982 and 1983 taxable years, petitioners' own evidence established that at least 25 percent of their travel in the Gullwing was for commuting. We disallowed 30 percent of their depreciation on the Gullwing based on our finding that 30 percent of their travel in the Gullwing was for commuting. It is clear that petitioners disregarded the rules and regulations, or were at least negligent, in claiming depreciation, an investment tax credit, and repair expense deductions on the basis that 100 percent of the use of the Gullwing was for business purposes in 1982 and 1983. Accordingly, we hold that petitioners are liable for the addition to tax pursuant to section 6653(a)(1) for 1982 and 1983. Further, we hold that petitioners are liable for the addition to tax pursuant to 6653(a)(2) but only as to the portion of the underpayment attributable to their having claimed depreciation deductions, investment tax credits and repair expense deductions based on their purported 100 percent business use as opposed *612 to the 75 percent business use reflected in their records. This is to be calculated without regard to the underpayment attributable to the retirement of the Gullwing. As to the portion of the underpayment resulting from our finding that the Gullwing was retired in 1983, we do not feel the section 6653(a)(2) addition to tax is warranted. We find that, based on the record as a whole, the facts herein presented substantial questions of law and fact, and petitioners believed that the Gullwing was not retired in 1983. See Kasey v. Commissioner,54 T.C. 1642, 1651 (1970), affd. per curiam 457 F.2d 369 (9th Cir. 1972). Accordingly, we hold that petitioners are not liable for an addition to tax pursuant to section 6653(a)(2) with respect to the underpayment attributable to the retirement. To reflect concessions and the foregoing, Decision will be entered pursuant to Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50% of the interest due on the underpayment attributable to negligence.↩
2. Respondent concedes that petitioners are not liable for an increased rate of interest under section 6621(c) and an addition to tax under to section 6661.↩
3. Dr. Hamby was advised by an attorney that he could not claim any depreciation with respect to the Gullwing if it were driven to his medical office.↩
4. Respondent does not dispute that petitioners' adjusted basis in the Gullwing is $ 63,534 even though Dr. Hamby purchased the Gullwing for $ 56,411 including the sales tax and license fee. Respondent also does not dispute that petitioners are entitled to capitalize $ 24,540 of the costs of repairs to the Gullwing or that those amounts have been substantiated.↩
5. We do not address, and respondent has not raised as an issue, whether such repairs would otherwise qualify for an investment tax credit if the Gullwing were not retired. ↩
6. With respect to a passenger automobile placed in service after March 1, 1984, new section 280F enacted by the Tax Reform Act of 1984 imposes limitations on the amount of depreciation and investment tax credit that can be claimed in any given year. See sections 280F(a)(1) and 280F(a)(2). This section would have changed the result in this case by reducing the amount of depreciation and investment tax credit that petitioners would have been entitled to claim in 1982.↩